[Cite as *Spotsylvania Mall Co. v. Nobahar*, 2013-Ohio-1280.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SPOTSYLVANIA MALL COMPANY | ) | CASE NO. 11 MA 82 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| SYED NOBAHAR, et al. | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 06 CV 3380

JUDGMENT:      Reversed.
Default Judgment Vacated.

APPEARANCES:

For Plaintiff-Appellee,      Atty. David A. Fantauzzi
Spotsylvania Mall Company:      Atty. Ronald J. Yourstowsky
2445 Belmont Avenue
P.O. Box 2186
Youngstown, Ohio 44504-0186

For Defendant-Appellant, Ben Manesh:      Atty. Matthew T. Anderson
Atty. Timothy M. Clayton, Jr.
Atty. David M. Scott
Luper Neidenthal & Logan
A Legal Professional Association
50 West Broad Street, Suite 1200
Columbus, Ohio 43215-3374

JUDGES:

Hon. Cheryl L. Waite
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: March 27, 2013

WAITE, J.

{¶1} Appellant, Ben Manesh, signed a commercial lease with Appellee, Spotsylvania Mall Company. Appellant had a co-signor on the lease, Syed Nobahar. The lease designated a Maryland address be used for communications to Appellant and Nobahar concerning the lease. Nobahar later requested that information concerning the lease be sent to an address in Virginia. Appellant never provided an address other than the Maryland address contained in the lease, and did not sign the later request sent by Nobahar. When Appellee filed a collection action against both Appellant and Nobahar, service was attempted only at the address provided by Nobahar, in Virginia. The trial court subsequently granted default judgment against Appellant alone, after Nobahar was released from liability in bankruptcy court. Appellant claims that he only became aware of the lawsuit due to Appellee's attempts to collect the judgment which were served at his home address in Maryland. Appellant contends that he never received service of the original complaint at any address reasonably calculated to give him notice of the lawsuit.

{¶2} Appellee failed to explain why service to Appellant in Virginia was reasonable, or to establish any connection between Appellant and the Virginia address. Appellant denied receiving service at the Virginia address and never appeared in the lawsuit. Under these circumstances, it was unreasonable for the trial court to deny Appellant's motion to vacate. The judgment of the trial court is reversed, and the default judgment against Appellant is vacated.

Factual and Procedural History

{¶3} The record in this case is particularly thin. This is partly because the initial resolution of the lawsuit was through a default judgment. The subsequent motion to vacate added little to the facts of the case. The record also lacks, as Appellee notes, a transcript of the hearing on Appellant's motion to vacate and the exhibits introduced during that hearing. This omission is due to Appellant's failure to file the transcript or seek leave to file the transcript when he filed his objections to the magistrate's decision denying his motion to vacate. The evidentiary deficiency extends beyond the subject matter of the hearing itself. Also absent is a copy of the lease agreement that formed the basis of the complaint as well as the facsimile sent by Nobahar that was alleged to have changed the address for service after the execution of the lease. A thorough review of the record in the trial court reveals that default judgment was granted despite the fact that Appellee never filed a copy of the lease agreement. The record further discloses that after obtaining default judgment on a contract it never produced, Appellee never remedied the omission. The lease agreement or agreements may have been produced to the magistrate during the hearing on the motion to vacate, however, because neither party filed a transcript of the hearing or copies of the evidence used during the hearing, this material, apart from a single clause included in the magistrate's findings of fact, was not part of the record before the trial court when ruling on Appellant's objections to the magistrate's decision or when entering final judgment. Because this material was not provided to the trial court it is not properly before us on appeal.

{¶4}    The facts that can be gleaned from the record as it comes before us begin with Appellee Spotsylvania Mall Company's complaint for money only, filed on August 30, 2006.  Appellee alleges in the complaint that it is the owner of property leased by Appellant, Ben Manesh, and another man, Syed Nobahar.  According to Appellee the address for both men is 5610 Heritage Hills Circle, Fredericksburg, Virginia, 22407.  According to the complaint, copies of the lease or leases for two units in the Spotsylvania Mall in Fredericksburg, Virginia, were not submitted with the complaint because they were "voluminous" and would be "submitted to [the court] prior to or at trial." (8/30/06 Compl., ¶3.)  Appellee did attach an accounting to the complaint, itemizing the delinquent amounts for each property.  The complaint alleged, and the accounting reflected, damages initially totaling $40,795.03, a total that would continue to increase until final judgment.  The court ultimately awarded Appellee $188,006.55 plus 18% interest to accrue until payment is made in full, and all costs of the action. (4/27/11 J.E.)

{¶5}    Both parties agree that Appellant and his co-defendant in the matter below, Syed Nobahar, co-signed at least one commercial lease for property owned by Appellee on July 9, 2004.  Appellant claims ignorance of the lease terms, although he concedes that he signed a lease.  He also claims ignorance of the change of address sent by Nobahar and has no knowledge of service of the complaint to the Virginia address provided to Appellee by Nobahar.  The complaint actually refers to two leases.  However, the parties, the magistrate, and the trial court subsequently refer to a single lease.  The parties agree that the lease or leases include a provision

agreeing to the jurisdiction of Mahoning County courts for all disputes arising out of the lease terms. The parties agree, and the magistrate's findings of fact adopted by the trial court confirm that the lease required Appellant and Nobahar to designate an address for all communications pertaining to the lease and established a procedure for changing that address. (4/27/11 J.E., p. 2.) According to the magistrate's findings of fact adopted by the trial court, the lease specifies 401 Stone Mason Drive, Gaithersburg, Maryland, 20878, as the address for both Appellant and Nobahar. (4/27/11 J.E., p. 2.) According to Appellee and the magistrate's findings of fact, on October 13, 2005 Appellee received a facsimile seeking to change the designated address from the original Maryland address to 5610 Heritage Hills Circle, Fredericksburg, Virginia, 22407. (4/27/11 J.E., p. 2.) Appellee admits that this notice was faxed from and signed by Nobahar, but not Appellant. (4/27/11 J.E., p. 2.) According to Appellant, he had no knowledge of the facsimile and has no connection to the address in Fredericksburg. All parties agree that, although the facsimile did not comply with the procedure designated in the lease for a change of address, Appellee used the Virginia address provided by Nobahar for all subsequent communications concerning the lease.

**{¶6}** On September 7, 2006, service of the complaint was initially attempted via certified mail to both Appellant and Nobahar at 5610 Heritage Hills Circle, Fredericksburg, Virginia, 22407, the change of address provided by Nobahar, alone. On October 4, 2006, both pieces of certified mail were returned by the U.S. Post Office to the Clerk of Courts as unclaimed. Appellee then requested, pursuant to

Civ.R. 4.6(D), that service to both parties be reissued via regular mail, to the same Fredericksburg, Virginia, address. Service via regular mail was completed by the clerk on October 6, 2006, and a certificate of mailing was entered on the docket by the clerk the same day. There is no indication in the record that service via regular mail to the Fredericksburg address was returned. Nothing further appears in the docket pertaining to service of the complaint. The next docket entry is a suggestion of bankruptcy, filed by Appellee on behalf of Nobahar, on March 20, 2007. The certificate of service indicates that this filing was sent to both Nobahar and allegedly to Appellant, again to the Fredericksburg address. The trial court stayed the matter due to Nobahar's Chapter 7 filing on March 22, 2007.

{¶7} The trial court granted Appellee's motion to return the case to the active docket on April 4, 2008, and specifically noted that proceedings would continue against Appellant, alone, as Nobahar had received a discharge in bankruptcy. No certificate of service accompanied Appellee's April 3, 2008 motion to return the case to the active docket.

{¶8} Appellee filed a motion for default judgment on May 19, 2008. Without explanation, this motion was sent to Appellant at 9901 Potomac Manors Drive, Potomac, Maryland, 20854, rather than the Fredericksburg address used for every other document in the lawsuit to date. Appellee attached a new statement of account and supporting affidavit to the motion, as well as an affidavit verifying that Appellant was not in active military service, in compliance with the Servicemembers Civil Relief Act. Appellee did not attach to the motion, or separately file, a copy of the lease

agreement(s). Despite the fact that the lease was never properly filed with the court, the trial court granted default judgment against Appellant for $188,006.55, plus interest and the costs of the lawsuit, on July 10, 2008. Between the May 19, 2008 motion for default judgment and the July 10, 2008 entry granting default judgment no additional filings appear of record. Between the filing of the complaint on August 30, 2006 and the decision granting default judgment on June 12, 2009, Appellant never answered the complaint or otherwise appeared in the lawsuit.

{¶9} On June 12, 2010, a year after default judgment was granted, Appellee took steps to collect on the judgment. Appellee began by filing a praecipe for authentication of judgment. Nothing appears in the record between the June 12, 2010 praecipe and Appellant's first entries on the docket, filed on December 3, 2010, which included a motion to reactivate the case and a hybrid motion to vacate the judgment and for stay of execution. According to Appellant's motions, and the copy of an affidavit attached to the motion to vacate (no original document appears in the file), Appellant was never served with the underlying complaint and was unaware of the lawsuit until Appellee began collection attempts. Appellant also alleged that he had never "maintained a habitual, continuous or highly continual and repeated physical presence at 5160 Heritage Hills Circle, Fredericksburg, VA 22407," the address provided solely by Nobahar and which was used by Appellee to allegedly obtain service of the complaint. (12/3/10 Motion Exh., Manesh Aff., ¶4.)

{¶10} Appellee responded to Appellant's motion to vacate by detailing its collection efforts through the Maryland courts. Appellee discusses only collection

efforts, all of which reflect attempted service at the Potomac, Maryland address, not the original Gaithersburg address specified in the lease, or the Fredericksburg, Virginia, address where service was originally alleged to have been made and all documents prior to the motion for default judgment were sent. Appellant's motion to vacate was set for a hearing before the magistrate on February 3, 2011 and leave was granted by the magistrate until February 17, 2011 to allow Appellant to file a supplemental memorandum. In his memorandum, Appellant challenged service based on the terms of section 22 of the lease agreement, which was later quoted, at least in part, in the magistrate's decision. This section apparently contains the procedure to change an address for notice purposes under the lease. The full lease agreement, however, was not attached to the memorandum. The magistrate's decision denying Appellant's motion to vacate was filed on March 3, 2011. Appellant's objections to the decision were timely filed on March 16, 2011. As earlier noted, no transcript of the hearing was filed with Appellant's objections and no motion for an order granting an extension of time to file the transcript appears in the record. No additional exhibits or transcripts were filed by either party.

**{¶11}** The trial court held a hearing on Appellant's objections to the magistrate's decision on April 19, 2011. On April 27, 2011, the trial court overruled Appellant's objections and adopted the magistrate's findings of fact and conclusions of law in their entirety. On May 20, 2011 Appellant filed this timely appeal from the April 27, 2011 entry of judgment.

**{¶12}** On June 6, 2011, nearly two months after the trial court's ruling and approximately two weeks after Appellant filed his notice of appeal, a transcript of the February 4, 2011 hearing and accompanying exhibits were filed to this Court. The transcript was endorsed by the court reporter on June 6, 2011. The date of filing, the date of the reporter's signature, and the accompanying statement by the reporter clearly reflect that the transcript and attached exhibits were not filed with the trial court prior to the court's April 27, 2011 ruling adopting the magistrate's decision and were instead filed for the first time in the court of appeals. (Notice of filing transcript of proceedings on appeal with exhibits, June 6, 2011).

**{¶13}** The record also contains three blue assignment notice envelopes, all of which were returned by the U.S. Postal Service as addressee not known, unable to forward. The first two assignment envelopes were sent on May 30, 2008 and appear to have contained the trial court's May 29, 2008 notice of assignment of a July 9, 2008 hearing on the motion for default. It is unclear to what address these notices were sent, but "Don't live here anymore" is handwritten across both under the U.S. Post Office's "attempted-not known" notice and the two envelopes were returned by the U.S. Post Office to the court on June 10, 2008. A third assignment notice envelope, apparently containing the trial court's January 6, 2011 notice of assignment for the February 7, 2011 hearing on Appellee's motion to reactivate the case, is also endorsed "Don't live here," and was returned by the U.S. Post Office as "attempted not known" on January 10, 2011.

<u>Argument and Law</u>

<u>Assignment of Error</u>

THE TRIAL COURT ERRED IN ADOPTING THE MAGISTRATE'S DECISION DENYING MANESH'S MOTION TO VACATE JUDGMENT.

**{¶14}** A trial court's decision to deny a motion to vacate judgment is reviewed on appeal for an abuse of discretion whether that motion is made pursuant to Civ.R. 60(B) or to the court's inherent power at common law to vacate a void judgment. *GTE Automatic Elec., Inc., v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 150, 351 N.E.2d 113 (1976) ("[h]aving found that the order of the trial court [granting the motion to vacate judgment] was a final order, we may now proceed to the question of whether the making of the order was an abuse of discretion") and *Terwoord v. Harrison*, 10 Ohio St.2d 170, 171, 757 N.E.2d 362 (1967) (because the trial court order overruled a motion to vacate default judgment "the trial court had the inherent right, founded upon the common law, to sustain or overrule the motion to vacate that judgment" and the appellate court "in ruling on the propriety or impropriety of that order, had only to rule upon the limited question of whether or not the trial judge abused his discretion in refusing to vacate the order"). "It is axiomatic that for a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void." *Lincoln Tavern, Inc. v. Snader*, 165 Ohio St. 61, 64 (1956) "[A] trial court is without jurisdiction to render a judgment or to make findings against a person who was not served summons, did not appear, and was not a party in the court proceedings. A person against whom such judgment and findings are made is

entitled to have the judgment vacated." *State ex rel Ballard v. O'Donnell*, 50 Ohio St.3d 182, 184, 553 N.E.2d 650 (1990). "The authority to vacate a void judgment is not derived from Civ. R. 60(B) but rather constitutes an inherent power possessed by Ohio courts." *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus.

{¶15} Abuse of discretion connotes more than an error of judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991). "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an 'abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985).

{¶16} The motion to vacate judgment in this instance was initially heard by a magistrate. An appeal filed from a trial court's decision adopting a magistrate's decision is also subject to the same abuse of discretion standard. Where, as here, the "party objecting to a referee's report has failed to provide the trial court with the evidence and documents by which the court could make a finding independent of the

report, appellate review of the court's findings is limited to whether the trial court abused its discretion in adopting the referee's [decision]." *State ex rel. Duncan v. Chippewa Twp. Trustees*, 73 Ohio St.3d 728, 730, 654 N.E.2d 1254 (1995). A party's failure to provide the trial court with the transcript or other evidence prevents this Court from considering any transcript submitted with the appellate record. *Id.* "[W]here the objecting party fails to provide the trial court with the transcript of the proceedings before the magistrate, the appellate court is precluded from considering the transcript" submitted with the appellate record because "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State ex rel. Duncan* and *State v. Ishmail*, 54 Ohio St.2d 402, 337 N.E.2d 500 (1978), paragraph one of syllabus. An appeal under these circumstances limits the appellate court review to "whether the trial court's application of the law to its factual findings" was an abuse of discretion. *State ex rel. Duncan* at 730.

{¶17} In order to meet the "standard of due process, first enunciated in *Mullane v. Central Hanover Bank & Trust Co.*," service of the summons and complaint required to initiate a lawsuit must satisfy "[a]n elementary and fundamental requirement of due process," which is, "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." (Emphasis deleted.) *Samson Sales, Inc. v. Honeywell, Inc.*, 66 Ohio St.2d 290, 293, 421 N.E.2d 522 (1981) and

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

{¶18} The mechanics of service to an out-of-state party is governed by Civ.R. 4.3: Process:  Out-of-State Service

> **When service permitted.**  Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state * * * 'Person' includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity who, acting directly or by an agent, has caused an event to occur out of which the claim that is the subject of the complaint arose, from the person's:
>
> * * *
>
> **Methods of service.**
>
> **Service by certified or express mail.**  Evidenced by return receipt signed by any person, service of any process shall be by certified or express mail unless otherwise permitted by these rules.  The clerk shall place a copy of the process and complaint or other document to be served in an envelope.  The clerk shall address the envelope to the person to be served at the address set forth in the caption or at the

address set forth in written instructions furnished to the clerk with instructions to forward.

**{¶19}** In addition to the service specified by Civ.R. 4.3(B)(1), which prescribes service by certified or express mail, but also allows service "otherwise permitted by these rules," Civ.R. 4.6 provides options where service is refused or unclaimed:

**Service unclaimed.** If a certified or express mail envelope is returned with an endorsement showing that the envelope was unclaimed, the clerk shall forthwith notify, by mail, the attorney of record * * * If the attorney, or serving party, after notification by the clerk, files with the clerk a written request for ordinary mail service, the clerk shall send by ordinary mail a copy of the summons and complaint or other document to be served to the defendant at the address set forth in the caption, or at the address set forth in written instructions furnished to the clerk. The mailing shall be evidenced by a certificate of mailing which shall be completed and filed by the clerk. * * * Service shall be deemed complete when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery. If the ordinary mail envelope is returned undelivered, the clerk shall forthwith notify the attorney, or serving party, by mail.

**{¶20}** The significance of the service requirement cannot be understated and it is clear that even if a defendant becomes aware of a suit against him through other

means or at some later stage in the suit, unless service has been properly made or the party has otherwise waived service by appearing in the lawsuit, no judgment may be entered against him. *Maryhew v. Yova*, 11 Ohio St.3d 154, 157, 464 N.E.2d 538 (1984). "Inaction upon the part of a defendant who is not served with process, even though he might be aware of the filing of the action, does not dispense with the necessity of service." *Haley v. Hanna*, 93 Ohio St. 49, 52, 112 N.E. 149 (1915).

**{¶21}** As a preliminary matter, Appellant's argument that service cannot be perfected on an out-of-state party via regular mail is incorrect. Appellant attempts to create an ambiguity in Civ.R. 4.3 that ignores the text of the rule, which explicitly allows service "otherwise permitted by these rules." Civ.R. 4.3(B)(1). When service is unclaimed or refused, as opposed to undeliverable, the Civil Rules allow service by regular mail, and deem service complete only where the regular mail is not returned as undeliverable. Civ.R. 4.6(D). Challenges to the mechanics prescribed by the Civil Rules for service by regular mail on an out-of state party are infrequent, but in the last thirty years, every Ohio district court that has considered the issue has found service via regular mail to be proper. Examples include, but are not limited to, *J.R. Productions, Inc. v. Young,* 3 Ohio App.3d 407, 409 44d N.E.2d 740 (10th Dist.1982) ("In other words, Civ. R. 4.6(D) is a specific provision applicable when a certified mail envelope is returned with an endorsement of 'unclaimed'" and is proper for out-of-state service where the requirements of Civ.R. 4.6 are met); also *State ex rel. Scioto Cty. Dept. of Human Servs. v. Proctor*, 2005-Ohio-1581, ¶13 (4th Dist.) ("service of process on an out-of-state defendant can be perfected when certified mail is

unclaimed by either filing the affidavit described in Civ.R. 4.3(B) or serving the defendant by ordinary mail as contemplated in Civ.R. 4.6(D)" (Emphasis deleted.)); and *Ferrie v. Ferrie*, 2 Ohio App.3d 122, 124, 440 N.E.2d 1229 (9th Dist.1981) (when serving an out-of-state party after certified mail was unclaimed, "appellee's use of Civ. R. 4.6(D) is fully authorized by the Rules of Civil Procedure and was proper in this case").

**{¶22}** The Supreme Court has not explicitly ruled on the issue, but that Court's recent change to Civ.R. 4.3, effective July 1, 2012, comports with the conclusion reached by the various district courts who have ruled on the issue. The new version of the rule is not applicable to the current matter, but the consensus of the various districts as to the interaction between the prior versions of Civil Rules 4.3 and 4.6 is persuasive. It is clear that the mechanics of service in this matter were correct. Of note here, however, is the rule that, in order for service via regular mail to satisfy due process, the address Appellant used for service must still be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, *supra*, at 314.

**{¶23}** According to the material that appears in the record, and to the findings adopted by the trial court, Appellant and another man, Syed Nobahar, signed a lease. Because no party has provided evidence of the complete terms of the agreement, we are bound by the facts pertaining to the lease as they appear in the magistrate's decision adopted by the trial court on April 27, 2011. According to those

findings, the lease required that Appellant and Nobahar provide an address for receipt of all communications pertaining to the lease. Service was not sent to this address. According to Appellee's own admission, a second address was provided to Appellee by Nobahar, not Appellant, for communications pertaining to the lease. The notice was apparently not provided pursuant to lease provisions for a change of address. Appellee admits that the notice was signed by Nobahar, but not by Appellant. Nothing in the record connects Appellant to the notice containing this changed address. Nothing in the record connects Appellant to the address itself. Nothing in the record before us provides evidence of what, if any, legal relationship may exist between Nobahar and Appellant to allow service by proxy or to authorize Nobahar to change the address on behalf of both parties. Although Appellee claimed during oral argument that the terms of the lease made service on one party sufficient for both, Appellee failed to produce any evidence of such a clause in the record below. Service to the Fredericksburg address provided by only Nobahar was unclaimed. Service was never attempted to any other address. Appellant never responded to the lawsuit or appeared in the record. A default judgment motion was filed, and Appellant never responded or appeared in the record. When Appellant filed his motion to vacate on December 3, 2010, he attached a copy of an affidavit averring that he never received service.

**{¶24}** It is not necessary to apply the rules governing service to a place of business in this instance, because nothing in the record suggests that the Fredericksburg address was Appellant's, or in fact Nobahar's, place of business.

While there is a suggestion that the changed address referred to the location of the leased premises, Appellee has not produced, and the trial court did not find, a single connection in the record between Appellant and the Fredericksburg address provided by Nobahar. Even if there was evidence that the leased premises was located in Fredericksburg, there is still no evidence that Appellant had any connection to this address other than his apparent agreement to the terms of the lease. Nothing in the record justifies a presumption that Appellant could be served at that address. Appellee's emphasis on Appellant's subsequent behavior after default was granted and denials of service at a third address when collection was later sought is misplaced. Absent appropriate service of the complaint, a party is not obligated to participate in or otherwise even acknowledge a legal proceeding is taking place. Appellant's subsequent behavior is irrelevant to Appellee's burden to meet the threshold requirement that initial service of process be made at an address reasonably calculated to give the party notice. Appellee has failed to introduce any evidence on the record that establishes a connection between Appellant and the address where service was attempted that would support the conclusion that service to that address was reasonably calculated to give notice pursuant to Civ.R. 4.

**{¶25}** Assuming Appellant was actively avoiding service of Appellee's collection attempts at the Potomac, Maryland address, nothing, short of waiver, can excuse the basic due process requirement that Appellee was first required to obtain service of the complaint. The lack of any evidence connecting Appellant in any way to the Fredericksburg address coupled with the admitted facts surrounding the

attempts at service negate the presumption that service to Appellant was complete at that address. The trial court's finding that Appellant was not credible when he claimed he did not receive service at the Fredericksburg address because he also denied that he later received service of the motion for default judgment at his (apparent) home address is unreasonable. Had the record demonstrated a sufficient connection between Appellant and the Fredericksburg address, had service of the complaint been made to the address provided in the lease, or had service of the complaint been attempted at what may be Appellant's home in Potomac, Maryland that Appellee used when seeking to collect its judgment, Appellee would have a stronger case that default judgment was appropriate. However, the record as it comes to this Court offers no support for the conclusion that such judgment was warranted, here. While the trial court may appropriately make findings as to Appellant's credibility, subsequent denial of service during collection procedures does not effect failure of service on the underlying complaint. The facts before us do not establish that service on the complaint was properly sought or obtained against Appellant. The trial court's decision to adopt the magistrate's decision was an abuse of discretion. Accordingly, Appellant's assignment of error is sustained. The decision of the trial court denying Appellant's motion to vacate is reversed and the trial court's default judgment against him is vacated.

## Conclusion

**{¶26}** Appellant's single assignment of error is sustained. Because no evidence of a connection between Appellant and the Fredericksburg address used

for attempted service of the complaint appears in the record, it was unreasonable for the trial court to conclude that service had been perfected on Appellant. The trial court's decision denying Appellant's motion to vacate is reversed and the trial court's judgment entry granting default judgment against Appellant is hereby vacated.

Donofrio, J., concurs.

DeGenaro, P.J., dissents; see dissenting opinion.

DeGenaro, P.J., dissenting.

**{¶27}** While I concur with the majority's analysis regarding the propriety of the mechanism of service used in this case, I dissent from the conclusion that service was not perfected against Appellant. Given the scant nature of the record and the procedural posture of this appeal, Appellant's ability to make his case that it was error as a matter of law to deny his motion to vacate the default judgment is constrained. Moreover, these two factors dictate a very narrow issue to be tested by our standard of review. Based upon the paucity of the record, we cannot adequately test whether the trial court abused its discretion by overruling Appellant's objections to the Magistrate's Decision. Rather, we must presume the regularity of those proceedings. Accordingly, the judgment of the trial court should be affirmed.

**{¶28}** The majority and I differ on how to apply the United States Supreme Court holding in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to the facts of this case; specifically, whether the address used by Appellee was "reasonably calculated" to provide Appellant with notice of the Complaint. Resolution of this issue is fact-driven by necessity; what is reasonable in one case may not be in another. This raises another analytical distinction. As a matter of Ohio law, in the absence of a transcript the court of appeals must presume sufficient evidence was presented to the trial court to support its decision. Here, the majority has done the opposite, presuming insufficient evidence was presented.

**{¶29}** The majority correctly notes the record is very limited here in the first instance; for example, it is unclear from the record whether the lease was filed with the trial court before default judgment was granted. That the lease was not properly before the trial court was detrimental to Appellant's argument contained in his objections before the trial court and fatal to his argument on appeal, as will be discussed below. However, the complaint was for money damages only, and the absence of the lease, while sloppy litigation practice, was not fatal to Appellee here as the majority has concluded. The record reveals there was a hearing before the trial court on the motion for default judgment on July 9, 2008 where evidence was

presumably presented, including the lease. However, Appellant has failed to file that transcript. We do know the lease was presented at the hearing before the magistrate on Appellant's motion to vacate; however, we cannot consider the substance of that document, aside from what the magistrate notes in his findings of fact.

**{¶30}** But I differ with the majority in the presumptions that can be made in light of this evidentiary gap. "When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm." *Knapp v. Edwards Laboratories,* 61 Ohio St.2d 197, 199, 400 N.E.2d 384, 385 (1980).

**{¶31}** The majority has done the opposite; in effect presuming from the lack of a transcript that evidence in support of certain factual matters was not presented by Appellee, and vacating the default judgment for that reason. Pursuant to *Knapp's* directive, we must presume sufficient evidence was presented to support the initial default judgment as well as the Magistrate's finding that Appellant was properly served; that as a matter of law the Fredericksburg Virginia address was reasonably calculated to provide notice. *Mullane*, *supra*.

**{¶32}** The procedural posture of the case controls from which party's perspective we review the record; specifically, which party bears the burden of proof. The default judgment was not appealed. This matter is before us on Appellant's motion to vacate a judgment, first heard by a magistrate, and then by the trial court hearing Appellant's objections, and denying the motion. On appeal, Appellant argues that the magistrate and the trial court abused their discretion by denying a motion to vacate a judgment, not in granting judgment in the first instance. This is a subtle but fundamental difference, because it dictates how broadly or narrowly this court reviews the discretion exercised by the trial court. Coupled with the inadequacy of the record filed with this court by Appellant, our standard of review is particularly constrained in this case. The issue before us is a narrow one: whether the trial court abused its discretion by overruling Appellant's objections and denying the motion to vacate. *State ex rel. Duncan*, supra.

{¶33} Appellant failed to provide the trial court with, at a minimum, the transcript of the hearing before the magistrate, including admitted exhibits. The transcript from the default judgment hearing has not been included in the record as well. This makes it virtually impossible for this court to measure whether the trial court abused its discretion in determining as a matter of law that service was proper as contemplated by *Mullane*. Thus, *Knapp* dictates we presume the regularity of the proceedings before the magistrate.

{¶34} Reliance on Appellant's self-serving affidavit to find the trial court abused its discretion is inapposite. There was a full evidentiary hearing on the motion to vacate before the magistrate, who found Appellant's testimony "not credible." We simply do not know what the other terms of the lease provided with respect to notice; *e.g.,* whether the notice provisions of the lease quoted in the Magistrate's Decision can be waived; or whether one co-tenant's statement regarding a change of address can bind the other. We do not know whether correspondence, rent payments and the like between the parties originated from or were sent to the Fredericksburg Virginia address, which would be another factual consideration relevant to whether service was reasonably calculated pursuant to *Mullane*. Moreover, counsel conceded that Appellant and the discharged defendant were partners. This raises a whole host of factual and legal issues that need to be resolved when considering the motion to vacate. Given Appellant's failure to provide a sufficient record for us to review, we must resolve ambiguities or gaps in the record by presuming the regularity of the proceedings before the magistrate.

{¶35} What is properly in the record for appellate review are the various exhibits filed by Appellee in opposition to Appellant's Motion to Vacate Default Judgment and a transcript of the hearing before the trial court on Appellant's objections. At that hearing, counsel for Appellant argued that Appellant's affidavit (a photocopy, no original was filed as a part of the record) denying service of the complaint was uncontroverted, and pursuant to *Russell v. Rooney,* 7th Dist. No. 88 CA 80, 1989 WL 27779 (Mar. 23,1989), that alone defeats service. However, as noted above, there was a full evidentiary hearing at which Appellee did challenge

Appellant's claim that he did not receive the Complaint, and in fact, the magistrate found that denial incredible. The trial court's and our standard of review of factual findings by the magistrate is limited precisely because neither court has the benefit of viewing the testimony of the witnesses in the manner the trier of fact did, in this instance the magistrate. Without the benefit of reading the transcript, neither the trial court, nor this court can say the magistrate abused his discretion by concluding service was proper. To let a one-dimensional, self-serving affidavit factually trump live testimony subject to cross-examination is problematic. It would create case law in this district permitting a defendant to collaterally attack and defeat a valid default judgment, rather than defending it in the first instance, or filing a direct appeal of that judgment. To permit this collateral attack would also negatively impact the principle of the finality of judgments.

{¶36} In conclusion, it is incumbent upon Appellant to provide a sufficient record to the trial court to address his objections, and to this court to address the assigned error. Here, Appellant failed to do so. Further, the procedural posture of the case placed the burden of proof on the motion to vacate upon Appellant. Whether the Fredericksburg Virginia address was "reasonably calculated" to provide Appellant with notice of the Complaint, as contemplated by *Mullane*, is necessarily driven by the facts; what is reasonable in one case may not be in another. Given Appellant's failure to provide a sufficient record for us to review, we must resolve ambiguities or gaps in the record by presuming the regularity of the proceedings before the magistrate. Thus, the decision of the trial court should be affirmed.