[Cite as *Menges v. Strunk*, 2025-Ohio-252.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

RONALD A. MENGES ET AL.,

Plaintiffs-Appellees,

v.

SAMUEL L. STRUNK ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 24 BE 0018

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 13-CV-269

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
2024 Judgment Entry is Reversed. 2013 Amended Judgment Entry is Void in part.

---

*Atty. Daniel P. Corcoran,* Theisen Brock, for Plaintiffs-Appellees and

*Atty. Kyle W. Bickford* and *Atty. Erik A. Schramm, Jr.,* Hanlon, McCormick, Schramm, Bickford & Schramm Co., LPA, for Intervenors-Plaintiffs-Appellees and

*Atty. Craig J. Wilson*, C.J. Wilson Law, LLC, for Defendants-Appellants.

Dated: January 28, 2025

**DICKEY, J.**

{¶1} Movants-Appellants, John Wayne Huddleston, Cynthia Huddleston, Linda Hanes, Hugh Hanes, Billy Payne, Richard Huddleston, David Jones, Grace Jones, James Jones, Denise Jones, Tammera Gray, and Kelly Gray (purported mineral owners), appeal the judgment entry of the Belmont County Court of Common Pleas overruling their Motion to Vacate the December 30, 2013 judgment entry of the Belmont County Court of Common Pleas, which was amended nunc pro tunc on January 22, 2014 and February 6, 2014 to correct property descriptions, in this action to quiet title filed pursuant to the Marketable Title Act, R.C. 5301.47, et seq. ("MTA") and the Dormant Mineral Act, R.C. 5301.56 ("DMA"). For the purpose of clarity, we refer to the 2024 judgment entry overruling Appellants' motion to vacate as the "judgment entry on appeal." We refer to the 2013 judgment entry granting the motions for judgment on the pleadings and quieting title in favor of Intervenors-Plaintiffs-Appellees, Blain and Deborah West, Joseph and Karen Porter, Joseph W. Husk and Megan Husk, Melvin W. Husk and Charlotte Husk, Vernon Troyer, and Wayne and Betty Jean Troyer, Co-Trustees of the Troyer Family Trust, and Richard L. Pfeiffer and Carole A. Pfeiffer, Trustees of the Pfeiffer Family Trust (surface owners), as the "2013 amended judgment entry."

{¶2} Appellants contend the 2013 amended judgment entry finding they abandoned their mineral rights in roughly 280 acres of property is void as applied to the claims of Appellees, thereby challenging the alleged abandonment of roughly 270 of the 280 acres at issue, because Appellees failed to serve Appellants with the intervenors' complaints. There is no dispute that Appellees neither personally served Appellants nor served them by publication. Appellees contend service was not required based on Civil Rule 5(A), which reads in relevant part, "[s]ervice is not required on parties in default for failure to appear except that pleadings asserting new or additional claims for relief or for additional damages against them shall be served upon them in the manner provided for service of summons in Civ. R. 4 through Civ. R. 4.6." Appellants counter the intervenors' complaints asserted new and additional claims, so service was required in order for the trial court to acquire jurisdiction over Appellants.

{¶3} In the judgment entry on appeal, the trial court concluded the intervenors' complaints advanced the same claim as the original complaint, which Appellants concede

was properly served and alleged extinguishment and/or abandonment of the mineral interest underlying the remaining ten acres of property. For the following reasons, the judgment entry on appeal is reversed, as we find the 2013 amended judgment entry is void in part, to the extent it pertains to Appellants' mineral interest in Appellees' property, based on Appellees' failure to serve the intervenors' complaints on Appellants.

## FACTS AND PROCEDURAL HISTORY

{¶4}  In 1953, O.A. Jones and Dora E. Jones, conveyed the property to their children, Darby L. Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk. The deed, which transferred ten parcels, with some parcels further subdivided into tracts, contains the following provision:

> Excepting and reserving to the Grantor, O.A. Jones, his heirs and assigns, all oil and gas under and within the premises hereby conveyed and herein above described.

{¶5}  O.A. Jones died on or about April 12, 1957. His will transferred his property to his wife, Dora E. Jones. Dora died on or about September 21, 1963, and her will conveyed her property to her children, Darby L. Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk.

{¶6}  Darby L. Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk subsequently conveyed roughly 1128 acres of the property to Seaway Coal Company by general warranty deed dated February 18, 1970, filed and recorded on March 2, 1970 in Volume 516, Page 82 of the Belmont County Deed Records ("Seaway deed").  The Seaway deed reads in relevant part:

> EXCEPTING AND RESERVING to the Grantors herein, their heirs and assigns, a one-half interest in all the oil and gas owned by Grantors, but conveying to the Grantee herein the other one-half interest in the oil and gas owned by Grantors.

Case No. 24 BE 0018

Appellants are the heirs of Darby L. Jones, Mildred Huddleston, and Martha Lee Mitchell, and the purported owners of the one-half oil and gas interest excepted and reserved in the Seaway deed ("Jones interest").

{¶7} On August 2, 2013, more than forty-three years after the Seaway deed was recorded, Plaintiff Ronald A. Menges ("Menges") filed a complaint alleging abandonment of the oil and gas rights under the 1989 version of the Dormant Mineral Act ("DMA"), and extinguishment of the oil and gas interest under the Marketable Title Act ("MTA"), as well as slander of title. The complaint sought an injunction, a declaratory judgment regarding ownership of the oil and gas rights, quiet title and damages in the amount of $63,650. All of the claims related to a 10.184-acre parcel owned by Menges ("Menges parcel"), which was part of the 1128 acres transferred in 1970 in the Seaway deed and purportedly encumbered by the Jones interest.

{¶8} Notice by publication of the complaint in this case was issued in the Times Leader newspaper to "the Unknown Heirs of Oliver A. Jones a/k/a O.A. Jones, Dora E. Jones, Darby Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk, et al." The publication includes the relevant case number, and recites the claim to quiet title to the "oil and gas rights reserved by O.A. Jones, Dora E. Jones, Darby Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk pursuant to O.R.C. 5301.56, effective March 22, 1989, and the Marketable Title Act." Appellants do not dispute that service was perfected on the original complaint.

{¶9} Appellees Wayne and Betty Jean Troyer, as Co-Trustees of the Troyer Family Trust, and Vernon Troyer were originally named as defendants, however the Troyers subsequently agreed they have no claim to the oil and gas underlying the Menges parcel and were dismissed from the action. Appellants David L. Jones and James Jones filed waivers of service of summons. Appellants David L. Jones, James Jones, and Tammera Gray signed agreed docket entries voluntarily dismissing them from the case, in exchange for their admission that they have no claim to the oil and gas interest underlying the Menges parcel.

{¶10} On October 17, 2013, after the dismissal of the foregoing defendants (with the exception of James Jones who was voluntarily dismissed in December of 2013), Appellees Richard L. Pfeiffer and Carole A. Pfeiffer, Trustees of the Pfeiffer Family Trust

("Pfeiffer Intervenors"), moved to intervene as plaintiffs in this matter. They asserted an interest based on their ownership of roughly 60 acres of the property originally transferred in the Seaway deed and purportedly encumbered by the Jones interest. The Pfeiffer Intervenors' complaint was essentially identical to the Menges complaint, but added a claim for tortious interference with a business relationship and sought damages in the amount of $377,037.

{¶11} On October 31, 2013, Appellees, Blain and Deborah West, Joseph and Karen Porter, Joseph W. Husk and Megan Husk, Melvin W. Husk and Charlotte Husk, Vernon Troyer, and Wayne and Betty Jean Troyer, Co-Trustees of the Troyer Family Trust ("Husk Intervenors"), moved to intervene as plaintiffs. They asserted an interest based on their ownership of roughly 210 acres of the property transferred in the Seaway deed and purportedly encumbered by the Jones interest. The Husk Intervenors' complaint was essentially identical to the complaint filed by the Pfeiffer Intervenors, but sought damages in the amount of $1,131,111. The Husk Intervenors' motion states they "own surface property which previously comprised the Jones Tract, and whose property may be affected by the Jones [interest] in dispute in the above action."

{¶12} It is undisputed that Appellees did not serve their intervening complaints personally or by publication on Appellants, who were either in default or dismissed from the case prior to the filing of the respective motions to intervene. Pursuant to an entry dated November 19, 2013, the motions to intervene were sustained by agreement of the parties, including counsel for Answering Defendants, Samuel Lee Strunk, Gary P. Strunk, L.D. Jenkins, Ramorra Minerals, Gentry, LLC, and Willow Point Corporation ("answering defendants").

{¶13} Menges and Appellees filed separate Motions for Judgment on the Pleadings. A response was filed on behalf of answering defendants on December 2, 2013.

{¶14} Following a hearing, the trial court issued the 2013 amended judgment entry sustaining both motions and quieting title to all of the oil and gas interest underlying the roughly 280 acres of property owned by Menges and Appellees. The trial court predicated its holding on the DMA, holding in relevant part: "[T]he 1989 version of [the DMA] is a self-executing statute, such that the oil and gas rights subject of this action vested in Seaway

Coal Company on March 22, 1992 [the three-year grace period following the enactment of the DMA on March 22, 1989], and thereafter passed in the chain of title to [Menges and Appellees]."

{¶15} On December 30, 2013, Menges moved for judgment against the defaulting parties. Appellees did not file a motion for default judgment as to the intervenors' complaints. The amended judgment entry awarded default judgment against Appellants to Menges only. Pursuant to an agreed judgment entry filed January 31, 2014, answering defendants "agree[d] and concede[d] that [Menges], together with all [Appellees], shall own and be entitled to One Hundred percent (100%) of all of the oil and gas underlying their real estate as set forth in Exhibits A through H of the Judgment Journal Entry," in exchange for an agreement by Menges and Appellees that they would not seek attorneys' fees.

{¶16} On July 12, 2023, roughly six months short of ten years later, Appellants filed their motion to vacate the 2013 amended judgment entry, except as it relates to the Menges parcel. Specifically, Appellants assert: (1) they were the lawful heirs of Darby L. Jones, Mildred Huddleston, and Martha Lee Mitchell; (2) the amended judgment entry divesting Appellants of their mineral rights was void as to Appellees' parcels given the lack of service of the intervenors' complaints; (3) Appellees were required to serve their complaints because they were asserting new claims and damages; and (4) the motion to vacate is not untimely.

{¶17} The Pfeiffer Intervenors' response advances the following arguments: (1) some Appellants have lost other cases challenging the validity of service of the complaints by other surface owners; (2) Gulfport Appalachia, LLC is a necessary party and should be joined; (3) the trial court obtained personal jurisdiction over Appellants because the original complaint was served by publication in the Times Leader newspaper; (4) the trial court had personal jurisdiction over three of Appellants – David A. Jones, Tammera Gray and James Jones – as they had appeared as to the Menges complaint (despite being subsequently dismissed either prior to or shortly after the filing on the intervenors' complaints); (5) Appellees were not asserting "new claims" under Civ. R. 5(A); (6) the lack of proper service is harmless error as res judicata and law-of-the-case doctrine apply; and (7) the equitable doctrine of laches bars the untimely motion to vacate.

Case No. 24 BE 0018

**{¶18}** The Husk Intervenors' response advances the following arguments: (1) they own 3/4ths of the oil and gas rights in their respective properties regardless of the motion to vacate because Appellants only claim 1/4th of the oil and gas rights; (2) Appellants have lost other cases challenging a surface owner's diligence to search for the owners of the Jones interest prior to publishing their complaints; (3) Appellants had sufficient notice of the lawsuit because the original complaint was served by publication; (4) Appellants David Jones, Tammera Gray and James Jones are estopped from admitting they do not own the Jones interest given the dismissal entries as to the Menges parcel; (5) the Husks were not asserting "new or additional claims" under Civ. R. 5 so service was not necessary; and (6) laches and waiver apply.

**{¶19}** In the judgment entry on appeal, the trial court overruled the motion to vacate, finding in relevant part: (1) the trial court obtained personal jurisdiction over Appellants when the summons and original complaint were properly served; (2) Appellants were apprised of the pendency of action and were afforded an opportunity to present their objections; (3) Appellants' prior attempts to vacate similar judgment entries were unsuccessful in both the trial court and the Seventh District Court of Appeals; (4) any defects in service did not affect the substantial rights of the parties and constitute harmless error since the intervening complaints concern the same oil and gas severance and the same claim adjudicated by the trial court concerning the abandonment of the Jones Interest by operation of the 1989 [DMA] and no judgment was rendered on any "new or additional claim" as contemplated by Ohio Civ. R. 5; and (6) Appellants' nearly ten-year delay in challenging the judgment entry jeopardizes the strong public policy which favors the finality of judgments.

**{¶20}** The judgment entry on appeal refers to three previous failed attempts by Appellants, John Wayne Huddleston, Richard Huddleston, Linda Haynes, and Nancy Payne, or their heirs, to reverse previous judgment entries finding abandonment of portions of the Jones interest. In *Mammone v. Reynolds* 2021-Ohio-3248 (7th Dist.), *Hein Brothers LLC v. Reynolds,* 2021-Ohio-4633 (7th Dist.), and *Franks v. Reynolds*, 2021-Ohio-3247 (7th Dist.), this Court affirmed the trial court's decision that Appellants failed to demonstrate a lack of due diligence by the plaintiffs-appellees in those cases in the search for defendants-appellants prior to service by publication. The foregoing cases are

factually distinct from the above-captioned appeal as the defendants-appellants in those cases were served by publication, whereas Appellees in this appeal concede they did not serve the intervenors' complaints on Appellants.

{¶21} This timely appeal followed.

## ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN DENYING APPELLANTS' MOTION TO PARTIALLY VACATE ITS DEC. 30, 2013 JUDGMENT ENTRY [. . .] DIVESTING APPELLANTS OF THEIR OIL AND GAS RIGHTS IN A CERTAIN 270 ACRES WHEN THE [APPELLEES] FAILED TO SERVE THEIR COMPLAINTS ASSERTING NEW CLAIMS, ADDITIONAL CLAIMS, AND ADDITIONAL DAMAGES UNDER CIV. R. 5(A).**

{¶22} Civ.R. 3(A) provides, in relevant part, that "[a] civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant . . . ." " '[F]or a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void.' " *Franks v. Reynolds*, 2021-Ohio-3247, ¶ 24 (7th Dist.), quoting *Lincoln Tavern Inc. v. Snader*, 165 Ohio St. 61, 64 (1956). A void judgment can be directly attacked without complying with any legal requirements related to the vacation of a voidable judgment. *Id.* Personal jurisdiction is a question of law and is reviewed de novo. *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27.

{¶23} In *Spotsylvania Mall Co. v. Nobahar*, 2013-Ohio-1280 (7th Dist.), we opined:

> The significance of the service requirement cannot be understated and it is clear that even if a defendant becomes aware of a suit against him through other means or at some later stage in the suit, unless service has been properly made or the party has otherwise waived service by appearing in the lawsuit, no judgment may be entered against him. *Maryhew v. Yova*, 11 Ohio St.3d 154, 157, 464 N.E.2d 538 (1984). "Inaction upon the part of a defendant who is not served with process, even though he might be aware

of the filing of the action, does not dispense with the necessity of service."
*Haley v. Hanna*, 93 Ohio St. 49, 52, 112 N.E. 149 (1915).

*Id.* at ¶ 20.

**{¶24}** However, Civ. R. 5(A) reads, in relevant part, "[s]ervice is not required on parties in default for failure to appear except that pleadings asserting new or additional claims for relief or for additional damages against them shall be served upon them in the manner provided for service of summons in Civ. R. 4 through Civ. R. 4.6." It is undisputed that Appellees did not serve the intervenors' complaints personally or by publication on Appellants.

**{¶25}** Appellants concede service of the Menges complaint was perfected on them by publication, and they do not challenge the entry of judgment quieting title to the Menges parcel. However, Appellees argue the trial court did not have jurisdiction over the alleged extinguishment/abandonment of their mineral interest in the additional 270 acres subject to the Jones interest and claimed by Appellees due to Appellees' failure to serve the intervenors' complaints by publication.

**{¶26}** Appellees cite *Whitright v. Whitright*, 2019-Ohio-326 (11th Dist.), for the proposition that the Menges complaint put Appellants on notice of Appellees claims. However, Appellees reliance on *Whitright* is misplaced, as the appellants in that case were not in default. The Eleventh District in *Whitright* specifically recognizes the distinction:

> The appellants argue, however, that it was necessary to obtain proper service of the cross-claim in order to obtain jurisdiction over that particular claim. The case law relied upon for this proposition is distinguishable from the present matter. For example, *Huntington Natl. Bank v. Dunno*, 10th Dist. Franklin No. 97APE02-223, 1997 WL 381743 (July 10, 1997), is cited for the proposition that a court does not have jurisdiction over an appellant as to a cross-claim where there is a lack of valid service. However, in *Huntington*, as well as other similar cases cited in the appellants' brief, the court specifically notes that no judgment may be

rendered on a "new or additional claim," such as a cross-claim, where a party "is in default of answer to the original complaint" and no service of the new claim has been made. *Id.* at *2. In other words, in those cases, there was a concern of rendering judgment on cross-claims that were improperly served because the defendant had never appeared before the trial court and would have no way of knowing additional claims had been filed. In the present matter, there was no issue with default as both Dorothy and Rodney had appeared and answered the Complaint and it is clear that counsel was fully aware of the cross-claim.

*Whitright* at ¶ 19.

**{¶27}** Next, Appellees argue those defendants who made an appearance and/or disclaimed their interest in the Menges parcel are estopped from argument they had no notice of Appellees' claims. However, those parties, with the exception of James Jones, were dismissed with prejudice by agreement of the parties prior to the filing of the intervenors' complaints. James Jones was dismissed on December 11, 2013 after the motions to intervene were sustained.

**{¶28}** Third, Appellees argue the intervenors' complaints advanced the same legal argument, that is, abandonment of the Jones interest, as the Menges complaint. Appellees predicate this argument on the 1989 version of the DMA, which read in relevant part:

Any mineral interest held by any person, other than the owner of the surface of the lands subject to the interest, shall be deemed abandoned and vested in the owner of the surface," unless . . . (c) one or more of the following saving events had occurred within the preceding 20 years:

(i) The mineral interest has been the subject of a title transaction that has been filed or recorded in the office of the county recorder of the county in which the lands are located;

(ii) There has been actual production or withdrawal of minerals by the holder from the lands, from lands covered by a lease to which the mineral interest is subject, from a mine a portion of which is located beneath the lands, or, in the case of oil or gas, from lands pooled, unitized, or included in unit operations, under sections 1509.26 to 1509.28 of the Revised Code, in which the mineral interest is participating, provided that the instrument or order creating or providing for the pooling or unitization of oil or gas interests has been filed or recorded in the office of the county recorder of the county in which the lands that are subject to the pooling or unitization are located;

(iii) The mineral interest has been used in underground gas storage operations by the holder;

(iv) A drilling or mining permit has been issued to the holder, provided that an affidavit that states the name of the permit holder, the permit number, the type of permit, and a legal description of the lands affected by the permit has been filed or recorded, in accordance with section 5301.252 of the Revised Code, in the office of the county recorder of the county in which the lands are located;

(v) A claim to preserve the interest has been filed in accordance with division (C) of this section;

(vi) In the case of a separated mineral interest, a separately listed tax parcel number has been created for the mineral interest in the county auditor's tax list and the county treasurer's duplicate tax list in the county in which the lands are located.

Former R.C. 5301.56(B)(1). Appellees argue that the trial court's conclusion regarding the occurrence of a savings event would either preserve the Jones interest in its entirety or establish abandonment of the Jones interest in its entirety, because the trial court

concluded that abandonment occurred three years after the enactment of the DMA (the grace period), when Seaway Coal owned the entire 280 acres.

**{¶29}** First, Menges' standing to assert ownership of the rights to the oil and gas and to quiet title in those rights is limited to his roughly ten-acre parcel. In Ohio, the resolution of ownership rights in real property is governed by R.C. 5303.01. *Hess Ohio Developments, LLC v. Belmont Cnty. Bd. of Revision*, 2020-Ohio-4729, ¶ 44 (7th Dist.). R.C. 5303.01 reads, in pertinent part, "[a]n action may be brought by a person in possession of real property, by himself or tenant, against any person who claims an interest therein adverse to him, for the purpose of determining such adverse interest." We have recognized that an action to quiet title is a statutory proceeding that "conclusively determine[s] the allocation of property interests." *Ochsenbine v. Cadiz*, 2005-Ohio-6781, ¶ 12 (7th Dist.). Insofar as Appellees' abandonment claims relate to 270 additional acres of property, we find the claims are new and additional to the claim asserted by Menges.

**{¶30}** Appellees argue their claims are identical to the claim advanced by Menges because the original complaint and the intervenors' complaints alleged abandonment of the same mineral interest. In *Hartline v. Atkinson,* 2020-Ohio-5606 (7th Dist.), we observed that "[p]ursuant to R.C. 5301.56(C)(2) [of the DMA], [one mineral holders' preservation affidavit] 'preserves the rights of all holders of a mineral interest in the same lands.' " *Hartline* at ¶ 36. In *Hartline*, the purported holders of the mineral interest were the grandchildren of the grantor who reserved a fractional interest of the oil and gas. We held that an affidavit of preservation filed by one of the grandchildren pursuant to the DMA preserved the mineral interest for all of the grandchildren. R.C. 5301.56(C)(2) of the DMA reads, "[a] claim that complies with division (C)(1) of this section or, if applicable, divisions (C)(1) and (3) of this section preserves the rights of all holders of a mineral interest in the same lands.

**{¶31}** Appellees argue the opposite is true: A claim that a mineral interest has been abandoned in 10 acres of property is identical to a claim that the same mineral interest has been abandoned in an additional 270 acres, as long as the abandonment is found to have occurred prior to the subdivision of the property encumbered by the mineral interest. However, Appellees have not cited any case law for the proposition that a judgment entry finding abandonment of an oil and gas interest relating to a small portion

Case No. 24 BE 0018

of a much larger oil and gas reservation is res judicata with respect to future challenges by surface owners to other portions of the same oil and gas reservation. For instance, there are at least four cases that have been filed with respect to the abandonment of the Jones interest, each relating to separate and distinct parcels.

**{¶32}** Of equal import, the intervenors' complaints add a new and additional claim, tortious interference with contract, and seek additional damages in the amount of $1,508,147. Even assuming the extinguishment/abandonment claims asserted by Appellees were identical to the DMA and MTA claims asserted by Menges, Appellees' additional claims for tortious interference and their damages claims, which are greater than twenty-three times the amount originally claimed by Menges ($63,650), clearly obliged Appellees to serve the intervenors' complaints on Appellants.

**{¶33}** Fourth, Appellees contend any error resulting from their failure to serve the intervening complaints by publication is harmless based on the law of the case doctrine. Fifth, Appellees contend Appellants could have appealed the amended judgment entry ten years ago. However, in the absence of proper service, Appellants were never parties to the lawsuit. Accordingly, the law of the case doctrine is inapplicable and Appellants did not have standing to appeal the merits of the case.

**{¶34}** Finally, Appellees contend the public policy favoring final judgments supports the trial court's denial of the motion to vacate. As evidence of prejudice, Appellees write, "[l]eases have been taken, oil and gas wells have been drilled, and thousands of dollars in lease money has been paid (and spent)." (Pfeiffer Intervenors' Brf. at p. 17.)

**{¶35}** Appellees argue the equitable doctrines of laches and waiver support the judgment entry on appeal. Laches consists of four elements: (1) unreasonable delay or lapse of time in asserting a right; (2) absence of an excuse for the delay; (3) knowledge, actual or constructive, of the injury or wrong; and (4) prejudice to the other party. *V.T. Larney, Ltd. v. Locust St. Invest. Co., LP*, 2019-Ohio-496, ¶ 37 (7th Dist.), citing *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145 (1995). All four elements must exist for laches to apply.

**{¶36}** The party invoking the doctrine must show the delay caused material prejudice. *Miller v. Cloud*, 2016-Ohio-5390, ¶ 86, citing *Thirty-Four Corp. v. Sixty-Seven*

Case No. 24 BE 0018

*Corp.*, 15 Ohio St.3d 350, 354 (1984). Material prejudice requires actual proof that evidence was lost or the moving party suffered a detriment. *RHDK Oil & Gas, L.L.C. v. Dye*, 2016-Ohio-4654, ¶ 43 (7th Dist.), appeal not allowed, 2017-Ohio-261.

**{¶37}** The decision to apply the equitable defense of laches is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *DeRosa v. Parker*, 2011-Ohio-6024, ¶ 49 (7th Dist.). Abuse of discretion is a finding that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶38}** Waiver is a voluntary relinquishment of a known right. *Chubb v. Ohio Bur. of Workers' Comp.*, 81 Ohio St.3d 275, 278 (1998). Waiver assumes one has an opportunity to choose between either relinquishing or enforcing the right. A waiver may be enforced by the person who had a duty to perform and who changed his or her position as a result of the waiver. *Id.*

**{¶39}** Waiver by estoppel exists when the acts and conduct of a party are inconsistent with his intent to claim a right. Where those acts have misled the opposing party to his prejudice, the party is estopped from enforcing the right. *Merriner v. Goddard*, 2009-Ohio-3253, ¶ 99 (7th Dist.). In other words, waiver by estoppel relies upon a party's inconsistent conduct, rather than his or her intent, to establish a waiver of rights. *Phillips v. Farmers Ethanol, L.L.C.*, 2014-Ohio-4043 (7th Dist.), ¶ 29, cause dismissed, 2015-Ohio-658, ¶ 29. An appellate court reviews a lower court's application of the doctrine of equitable estoppel for abuse of discretion. *DeRosa*, *supra*, at ¶ 50.

**{¶40}** The Ohio Supreme Court has opined that equitable doctrines do not bar a movant from seeking relief from a void judgment. *In re Estate of Gray*, 162 Ohio St. 384, 391-392 (1954) (laches). The Court observed that " 'one against whom a void judgment is made will not be estopped by laches to seek relief from such judgment at any time.' " *Id.* (citing cases from other states).

**{¶41}** In *Altman v. Parker*, 2018-Ohio-4583 (1st Dist.), the First District opined:

> If the trial court in this case lacked jurisdiction to issue the default judgment, laches on the part of Parker cannot validate what is a nullity. See *Austin v. Smith*, 312 F.2d 337, 343 (D.C.Cir.1962) (a void judgment cannot "acquire validity because of laches on the part of him who applies for relief

from it"). Thus, the trial court erred when it relied on laches to overrule Parker's motion to set aside the default judgment allegedly encumbered with a jurisdictional defect.

*Id.* at ¶ 9. The same is true here.

**{¶42}** In summary, we find the 2013 amended judgment entry in this case is void in part, to the extent it applies to Appellees' property, based on Appellees' failure to serve the intervenors' complaints on Appellants. Although the intervenors' complaints sought to establish abandonment of the same mineral interest as Menges, Appellees' claims relate to separately-owned parcels. Further, Appellants' actual notice of the claims and the ten-year lapse between the 2013 amended judgment entry and the motion to vacate cannot resurrect the void judgment. Insofar as Appellees failed to perfect service on Appellants, we reverse the judgment entry on appeal and find the 2013 amended judgment entry is void in part, to the extent it applies to Appellees' property.

Robb, P.J., concurs.

Hanni, J., concurs.

[Cite as *Menges v. Strunk*, 2025-Ohio-252.]

_____

For the reasons stated in the Opinion rendered herein, the 2024 judgment entry from the Court of Common Pleas of Belmont County, Ohio, overruling Appellants' motion to vacate, is reversed. The 2013 amended judgment entry is void in part, to the extent it pertains to Appellants' mineral interest in Appellees' property, based on Appellees failure to perfect service on Appellants. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**