[Cite as *Franks v. Reynolds*, 2021-Ohio-3247.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

JOHN K. FRANKS et al.,

Plaintiffs-Appellees,

v.

PATSY L. REYNOLDS et al.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 BE 0004**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 14 CV 81

**BEFORE:**
Carol Ann Robb, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Matthew W. Onest, Atty. Owen J. Rarric, Atty. Terry A. Moore*, KRUGLIAK, WILKINS, GRIFFITHS & DOUGHERTY CO., L.P.A., 4775 Munson Street NW/P.O. Box 36963, Canton, Ohio 44735; *Atty. Gregory Watts,* P.A.C. Drilling O & G LLC, 1037 Lawnridge Street, Bolivar, Ohio 44612 for Plaintiffs-Appellees and

*Atty. J. Benjamin Fraifogl, Atty. Jeremy D. Martin,* Roetzel & Andress, LPA, 222 South Main Street, Akron, Ohio 44308, for Defendants-Appellants.

Dated: September 16, 2021

---

**Robb, J.**

{¶1} Appellants (who call themselves the "Huddleston Heirs") appeal the decision of the Belmont County Common Pleas Court in Case Number 14 CV 81 denying their motion to vacate a default judgment, which they filed six years after the court quieted title to the oil and gas underlying the property of Plaintiffs-Appellees John and Gerald Franks. Appellants claim the trial court lacked personal jurisdiction due to service of the complaint by publication, rendering the judgment void and subject to vacation at any time. Specifically, they allege Appellees failed to use reasonable diligence in attempting to locate addresses for four of the defendants. For the following reasons, the trial court's judgment is affirmed.

<u>STATEMENT OF THE CASE</u>

{¶2} Appellees John K. Franks and Gerald L. Franks owned 69.079 acres in Belmont County. Their predecessor in title purchased the property along with one-half of the oil and gas in 1970 from Darby L. Jones, Mildred Huddleston, Martha Lee Mitchell, and Verda Strunk. (Deed to Seaway Coal Company, 3/2/70, Vol. 516, P. 82).[1]

{¶3} On March 11, 2014, Appellees filed a complaint to obtain title to the oil and gas rights (originally retained by those four grantors) through declaratory judgment, quiet title, and an injunction. Nineteen defendants (plus John Does) were named, including John Wayne Huddleston, Richard Huddleston, Linda Haynes, and Nancy Payne (the four defendants at issue). These and many other defendants had been named in the will of their aunt, Martha Lee Mitchell, which was probated in 1995 in Texas. (Complaint Ex. F).

{¶4} The complaint stated the four defendants at issue could not be located with reasonable diligence and service by publication was appropriate under R.C. 2703.14 and Civ.R. 4.4(A). Appellees thereafter filed an affidavit for publication stating the addresses for the four defendants at issue (and for three other defendants) were unknown and could

---

[1] The deed conveyed multiple parcels to Seaway Coal, including those at issue in *Mammone v. Reynolds*, 7th Dist. Belmont No. 21 BE 5, where different plaintiffs previously recovered title against the same defendants at issue herein.

not be ascertained with reasonable diligence. Counsel attested to searching numerous databases containing public records, including Westlaw's People Search and Public Records, and requesting probate searches and records from probate courts in Belmont County, Ohio and Hidalgo and Kleberg Counties in Texas. (4/16/14 Aff.); (5/12/2014 Amd. Aff.).[2]

**{¶5}** Notice of the lawsuit was published weekly for six weeks in the Times Leader, a newspaper published in Belmont County. On July 25, 2014, Appellees filed a motion for default against the four defendants at issue as their answers were due July 22, 2014 (28 days after the last publication) and they did not file answers.

**{¶6}** On July 29, 2014, the court granted the motion for default judgment, noting the defendants failed to answer or appear after being served via publication for six consecutive weeks. The court quieted title in favor of Appellees. The judgment was recorded on August 15, 2014.

**{¶7}** Six years later, on September 15, 2020, a motion to vacate the default judgment was filed by the "Huddleston Heirs" who are the five appellants herein: John Wayne Huddleston; Cynthia Huddleston (she was not a defendant in the lawsuit but the wife of John, who was still alive); Richard Huddleston; Linda Hanes (whose name in the complaint was spelled Haynes as this was the spelling in her aunt's will[3]); and Billy G. Payne (the husband of Nancy Payne; she was an heir named as a defendant but died after the default judgment).

**{¶8}** The motion said they did not see the notification in the Ohio newspaper as it "is not available in Texas" and they had no knowledge of the judgment until January 2020. Four affidavits were attached stating the affiants were not served with any item from the court until January 2020, when they were served with a complaint in a different lawsuit.

---

[2] In the meantime, a consent judgment was signed by six defendants releasing any oil and gas rights to Appellees. (5/1/14 J.E.). The court granted default judgment against six defendants who were served by certified mail, and the judgments quieting title were recorded. (5/7/14 J.E., 6/2/14 J.E.).

[3] Below, Linda complained about the spelling of Hanes, but Appellees explained Haynes (with a y) was the spelling in her aunt's will which is where they discovered her identity as an heir. Appellants do no maintain an argument on appeal as to the spelling used in the search.

{¶9} John Wayne Huddleston's affidavit disclosed his address in 2013, attesting he lived there with his wife since 2006. He said he never received mail at the post office box where the complaint was attempted to be served before publication.

{¶10} Richard Huddleston's affidavit listed his address at the time of the 2014 complaint and said he lived there in 2013 as well. He said the address where the complaint was attempted to be served (before publication) was an office building where he once worked but said he did not receive mail there.

{¶11} Linda Hanes attested to the address where she had been residing since 2000. She added, "It is unknown to me how anyone, in using due diligence, did not find my address * * * when at the time of the filing of the lawsuits, I had lived there for thirteen (13) years."

{¶12} Billy G. Payne's affidavit listed the address where he lived with Nancy Payne in 2013, disclosing they began residing there in 2010. He too expressed, "It is unknown to me how anyone, using due diligence, did not find our address * * *."

{¶13} While noting Civ.R. 60(B)(5) allows the court to vacate a judgment for any reason, Appellants asked the court to use its inherent authority to vacate the default judgment, claiming it was void for lack of personal jurisdiction due to the failure to perfect service. However, they cited case law unrelated to service by publication stating: when the plaintiff follows the Civil Rules governing service of process, there is a rebuttable presumption of actual service; the defendant can rebut the presumption by merely swearing he "did not reside at the address to which process was sent"; and the burden then shifts to the plaintiff to produce evidence "demonstrating that defendant resided at the address is question."

{¶14} Appellees responded by emphasizing proper service by publication does not require actual notice or publication in other states, quoting from Civ.R. 4.4(A) and R.C. 2703.14(A). They explained compliance with the Civil Rules *for service by publication* raised a rebuttable presumption of reasonable diligence *in the address search*. They urged Appellants failed to rebut the presumption as they failed to disclose what was wrong with the search or state how they could have been located.

{¶15} Additionally, Appellees provided evidence in order to alternatively satisfy any shifting burden to prove their reasonable diligence. Their attorney submitted an

affidavit listing the records searched prior to submitting the affidavit in support of publication: public records, probate records in Belmont County, probate records in Hildalgo and Kleberg County, Texas, the records of the Ohio Department of Natural Resources, the subscription services of Westlaw People Search and idocket.com, and the databases of Whitepages, Google, Peoplesmart, deathrecord.com, billiongraves.com, familysearch.org, and zabasearch.com.

{¶16} Appellees noted their attorney represented other plaintiffs in other lawsuits which were filed in 2013 against the same defendants regarding other property, citing *Mammone v. Reynolds*, 13 CV 179 and *Hein Brothers LLC v. Reynolds,* 13 CV 180. Appellees said these suits were important to the service issue in this case "because the due diligence prior to publication was identical." The attorney attached to his affidavit the complaints and proof of failure of service on the two Huddleston defendants in those suits. (Aff. Ex. A & B).

{¶17} The affidavit of Appellees' attorney incorporated a file showing some of the search efforts through early 2013, during the original search for the record holders and heirs. (Aff. Ex. C). He also attached items related to other landowners, claiming they showed two other law firms could not locate Appellants; yet, these items showed the other firms did not identify the four defendants at issue, not that they could not find their addresses. (Aff. Ex. D & E).

{¶18} Appellees alternatively raised waiver and laches, pointing out the court entered the judgment six years before the motion to vacate and Appellants waited eight months from allegedly learning of the judgment to seek vacation. Appellants replied by pointing out the timeliness of the motion was irrelevant as they were not relying on Civ.R. 60(B).

{¶19} Appellants' reply also noted the lengthy file attached to the affidavit of Appellees' attorney was "inclusive of all the defendants, not just the four (4) individuals filing to vacate judgment." They emphasized they did not evade service or move often but had established addresses.

{¶20} A telephone hearing was conducted on December 14, 2020. At the hearing, both sides relied on matters already argued in their filings without advancing supplemental legal or factual material. Appellants noted they were not vagrant or evading

service and some lived at their residences for a substantial period of time. Appellees pointed out Appellants failed to inform the court what was lacking in Appellees' search, such as by specifying additional locations to search or identifying records reasonably available at the time of the search that would have generated Appellants' addresses. (3/1/20 App.R. 9(C)(1) Approved Statement of the Proceedings).

**{¶21}** On December 21, 2020, the trial court denied the motion to vacate the judgment and concluded it had personal jurisdiction as service by publication was properly invoked and accomplished. The court observed it was "neither surprising nor dispositive" that Appellants did not receive timely or actual notice and the question was whether Appellees exercised reasonable diligence in their efforts to locate Appellants before requesting service by publication.

**{¶22}** The court opined Appellants did not sufficiently rebut the presumption of reasonable diligence by listing their addresses at the relevant time without explaining how Appellees could have discovered these addresses. The court alternatively held: even assuming Appellants rebutted the presumption, Appellees proved "their diligence was more than reasonable." The court then quoted from ¶ 8 of the affidavit of Appellees' attorney listing the records searched. The court opined the judgment was neither void nor voidable under these circumstances.

**{¶23}** Appellants filed a timely notice of appeal, which was amended with leave of court after they forgot to list Cynthia Huddleston as an appellant.

LAW ON SERVICE BY PUBLICATION

**{¶24}** "[F]or a court to acquire jurisdiction there must be a proper service of summons or an entry of appearance, and a judgment rendered without proper service or entry of appearance is a nullity and void." *Lincoln Tavern Inc. v. Snader*, 165 Ohio St. 61, 64, 133 N.E.2d 606 (1956). A void judgment can be directly attacked without complying with any legal requirements related to the vacation of a voidable judgment. *Id.* Therefore, a party who can show a judgment is void need not meet Civ.R. 60(B) requirements but can rely on the trial court's inherent authority to vacate a void judgment. *Patton v. Diemer*, 35 Ohio St.3d 68, 518 N.E.2d 941 (1988), paragraph four of the syllabus.

**{¶25}** More specifically, we have stated if the plaintiff fails to perfect service on a defendant due to the lack of reasonable diligence before service by publication, then the

trial court lacked jurisdiction to enter default judgment against the defendant and the judgment is void. *American Tax Funding L.L.C. v. Robertson Sandusky Properties*, 2014-Ohio-5831, 26 N.E.3d 1202, ¶ 24 (7th Dist.).

**{¶26}** A statute provides: "Service may be made by publication in * * * an action for the recovery of real property or of an estate or interest in real property, when the defendant is not a resident of this state or his place of residence cannot be ascertained * * *." R.C. 2703.14(A). Nevertheless, the Rules of Civil Procedure "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction." Civ.R. 1(A). *See also State ex rel. Loyd v. Lovelady*, 108 Ohio St.3d 86, 2006-Ohio-161, 840 N.E.2d 1062, ¶ 6 (the constitution vests the Supreme Court with exclusive authority on rules governing court practice and procedure, and the law shall not conflict with the rules).

**{¶27}** Contrary to any veiled suggestion in Appellees' brief, the statute does not provide authority to serve by publication without following the rule. And, Appellees did not make such an argument below but read the statute in conjunction with the rule. The Supreme Court applies Civ.R. 4.4. notwithstanding the statute permitting publication. *Sizemore v. Smith*, 6 Ohio St.3d 330, 331, 453 N.E.2d 632 (1983) (applying a different statutory division).

**{¶28}** Pursuant to Civ.R. 4.4(A), "when service of process is required upon a party whose residence is unknown, service shall be made by publication in actions where such service is authorized by law." As Appellees point out, service would be "authorized by law" here under R.C. 2703.14(A), and Appellants do not argue otherwise.

**{¶29}** Before service by publication, an affidavit of the party requesting service or the party's counsel shall be filed with the court, and the affidavit "shall aver that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence." Civ.R. 4.4(A). "Upon the filing of the affidavit, the clerk shall cause service of notice to be made by publication in a newspaper of general circulation in the county in which the action or proceeding is filed * * * at least once a week

Case No. 21 BE 0004

for six successive weeks unless publication for a lesser number of weeks is specifically provided by law." *Id.*

**{¶30}** A sufficient averment in the affidavit for publication filed under Civ.R. 4.4(A) "gives rise to a rebuttable presumption that reasonable diligence was exercised." *Sizemore*, 6 Ohio St.3d at 331. *See also American Tax Funding*, 2014-Ohio-5831 at ¶ 28. The parties agree Appellants had the initial burden to rebut the presumption of reasonable diligence.

**{¶31}** When "challenged" by the defendant, the plaintiff must "support the fact that he or she used reasonable diligence." *Sizemore*, 6 Ohio St.3d at 332 (before the rule instructed the plaintiff to list efforts in the affidavit for publication); *American Tax Funding*, 2014-Ohio-5831 at ¶ 28. The parties also agree Appellees would have had the burden to prove reasonable diligence if Appellants rebutted the presumption.

*{¶32}* Reasonable diligence is a "fair, proper and due degree of care and activity, measured with reference to the particular circumstances; such diligence, care, or attention as might be expected from a man of ordinary prudence and activity." *Sizemore*, 6 Ohio St.3d at 332 (using the definition in *Black's Law Dictionary*). "[R]easonable diligence will depend on the facts and circumstances of each particular case." *Id.*

**{¶33}** In *Sizemore*, the defendant raised insufficient service of process before trial, and the Court found the efforts to locate his address did not constitute reasonable diligence where the plaintiff's counsel merely asked if the address was known by his own client (whose husband was struck by the defendant's vehicle) and contacted the post office (where he learned there was no forwarding address for the defendant who had moved). The Court noted the post office only saves forwarding addresses for a year, making the post office of limited value when a defendant moved more than a year ago, and observed:

> Certainly a check of the telephone book or a call to the telephone company would hold more promise than a contact of one's own client. Other probable sources for a defendant's address would include the city directory, a credit bureau, county records such as the auto title department or the board of elections, or an inquiry of former neighbors.

*Sizemore*, 6 Ohio St.3d at 332. *However:* "These examples do not constitute a mandatory checklist. Rather, they exemplify that reasonable diligence requires counsel to use common and readily available sources in his search." *Id.*

**{¶34}** The reasonable diligence standard protects due process rights. *See In re Foreclosure of Liens for Delinquent Taxes,* 62 Ohio St.2d 333, 336, 405 N.E.2d 1030 (1980), citing *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950) ("This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning. Those beneficiaries [whose] whereabouts could not with due diligence be ascertained come clearly within this category"). "[D]ue process does not require that an interested party receive actual notice [or] 'heroic efforts' to ensure the notice's delivery." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, 875 N.E.2d 582, ¶ 14.

**{¶35}** As to the allegations necessary to rebut a presumption in general, both parties cite Evid.R. 301, which states: "In all civil actions and proceedings not otherwise provided for by statute enacted by the General Assembly or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-persuasion, which remains throughout the trial upon the party on whom it was originally cast."

**{¶36}** Appellees urge if a rebuttable presumption could be rebutted by merely opining the search was not diligent without pointing to why their search was lacking or to where else they should have searched, then no rebuttable presumption would exist. *Citing Kennedy v. Walcutt*, 118 Ohio St. 442, 161 N.E. 336 (1928) ("When a party is not required to sustain the burden of proof upon some particular issue, a rebuttable presumption arising out of such issue may be overcome by evidence which counterbalances the evidence to sustain the presumption"). Appellants suggest their affidavits provided circumstantial evidence rebutting the presumption.

**{¶37}** The Supreme Court has observed: "The defendant is further protected because she * * * may bring in independent evidence to contradict the reasonable diligence of the plaintiff's search." *Brooks v. Rollins*, 9 Ohio St.3d 8, 11, 457 N.E.2d 1158

(1984) (after setting forth the plaintiff's burden to show reasonable diligence had been exercised prior to service by publication).

**{¶38}** The Eighth District recently concluded the defendant "failed to present sufficient independent evidence to contradict the plaintiff's exercise of reasonable diligence * * *." *Corrao v. Bennett*, 2020-Ohio-2822, 154 N.E.3d 558, ¶ 22 (8th Dist.). They pointed out: "Although appellant claims that additional efforts should have been made, such as a Google search and a BMV check, the trial court recognized that there was nothing to indicate that such searches would not have been futile and that it was appellant's duty to set forth factual material that on its face supported his argument." *Id.*

**{¶39}** Regarding our standard of review, the parties recognize this court has ruled the abuse of discretion standard applies when reviewing a trial court's decision on a motion to vacate a void judgment for lack of personal jurisdiction where the question is whether reasonable diligence was exercised before service by publication. *American Tax Funding*, 2014-Ohio-5831 at ¶ 17, citing *Spotsylvania Mall Co. v. Nobahar*, 7th Dist. Mahoning No. 11 MA 82, 2013-Ohio-1280, ¶ 14. *See also Fernwalt v. Our Lady of Kilgore*, 7th Dist. No. 15 CA 0906, 2017-Ohio-1260, 88 N.E.3d 499, ¶ 13 ("The trial court's decision regarding the validity of service should be upheld absent an abuse of discretion."). An abuse of discretion implies that a decision is unreasonable, arbitrary, or unconscionable; we do not substitute our judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶40}** Various other districts have likewise concluded the appellate court reviews the question of reasonable diligence for an abuse of discretion notwithstanding its jurisdictional implications. *See, e.g., Flaugher v. Flaugher*, 2020-Ohio-299, 143 N.E.3d 623, ¶ 9 (2d Dist.) (abuse of discretion standard of review applies regardless of whether the motion was granted under Civ.R. 60(B) or pursuant to the trial court's inherent authority to vacate void judgments); *Name Change of Rowe*, 2019-Ohio-4666, 135 N.E.3d 782, ¶ 16 (4th Dist.) (although an appellate court reviews a determination of personal jurisdiction under a de novo standard of review, a trial court's finding regarding whether service was proper is not reversed absent an abuse of discretion); *Matter of M.R.J.*, 4th Dist. Lawrence No. 18CA17, 2019-Ohio-2755, ¶ 24 (on reasonable diligence before publication, the "reviewing court will not disturb a trial court's finding regarding

whether service was proper unless the trial court abused its discretion"); *Nationstar Mtge. LLC v. Williams*, 5th Dist. Delaware No. 14 CAE 04 0029, 2014-Ohio-4553, ¶ 34 ("Whether a party exercised reasonable diligence is fact dependent and conducted at the trial court's discretion"); *Motorists Mut. Ins. Co. v. Roberts*, 12th Dist. Warren No. CA2013-09-089, 2014-Ohio-1893, ¶ 30 ("an Ohio court has the inherent power to vacate a void judgment" and "reviews the denial of a common law-motion to vacate under an abuse of discretion standard"). *See also Corrao*, 2020-Ohio-2822 at ¶ 16, 23 (8th Dist.).

**{¶41}** Appellants do not specifically argue we should reject the abuse of discretion standard of review set forth in *American Tax Funding* and apply a de novo standard of review to some issues. Still, a footnote in Appellants' brief sets forth the general holding: "Personal jurisdiction is a question of law that appellate courts review de novo." *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, 6 N.E.3d 9, ¶ 11 (in the context of a Civ.R. 12(B)(2) motion to dismiss without an evidentiary hearing where the trial court must view the allegations in the light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor). *Id.*[4]

**{¶42}** The footnote in Appellants' brief also states the Tenth District applied a de novo standard of review to a motion to vacate which alleged lack of reasonable diligence in locating the defendant. *J.M. v. J.C.*, 10th Dist. Franklin No. 19AP-739, 2020-Ohio-4963, ¶ 16-17, 21. That district previously addressed reasonable diligence before publication by stating: "to attack a judgment on the grounds that it is void due to a lack of personal jurisdiction, a defendant must file a common-law motion to vacate. * * * Appellate courts review the denial of a common-law motion to vacate under the abuse of discretion standard." *Third Fed. Savings & Loan Assn. of Cleveland v. Taylor*, 10th Dist. Franklin No. 17AP-254, 2017-Ohio-7620, ¶ 11.

---

[4] Where a Civ.R. 12(B)(2) motion is denied and the defense of lack of personal jurisdiction is maintained, the plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence at the evidentiary hearing or the trial. *Giachetti v. Holmes*, 14 Ohio App.3d 306, 307, 471 N.E.2d 165 (8th Dist.1984). Generally, the review after trial entails an evaluation of the sufficiency of the evidence to meet the applicable standard which is a legal question and the weight of the evidence which is generally left to the fact-finder. *See Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 11, 19.

**{¶43}** A non-majority Supreme Court opinion once opined the reviewing courts need guidance on the standard of review and proposed: "when a reviewing court assesses a trial court's conclusion that service by publication was proper, the reviewing court should apply the same standards, and should not defer to the trial court's conclusion." *In re Thompkins*, 115 Ohio St.3d 409 at ¶ 55 (O'Connor, J. concurring in part and dissenting in part, with two other justices agreeing) (where the majority addressed a mailing issue without addressing reasonable diligence before publication as the Court found the parties and the appellate court did not address the issue).

**{¶44}** In general, "A court of appeals may review findings of fact for an abuse of discretion by the trial court." *See generally In re Guardianship of Rudy*, 65 Ohio St.3d 394, 396, 604 N.E.2d 736, 738 (1992). The credibility of statements by counsel as to his search efforts made at a hearing on the motion or in counsel's affidavit relied upon at the hearing were questions for the trial court. A mixed standard of review is commonly employed when there are factual and legal questions, where we would accept the trial court's factual findings if supported by competent, credible evidence but review de novo whether the facts meet the applicable legal test. As set forth below, applying a mixed or even a de novo standard of review would not assist Appellants here.

**{¶45}** Before moving from our review of the law to the assignment of error, we lastly note Appellants complain about the trial court citing two Seventh District cases which involved publication of a notice of intent to declare a mineral interest abandoned under the 2006 Dormant Mineral Act and did not involve service of a complaint by publication. These citations were attached to the court's observation: service by publication was authorized (as the term is used in Civ.R. 4.4) and the decision turns on whether reasonable due diligence was exercised in the efforts to locate Appellants before publication. Appellants do not contest on appeal that service by publication would be authorized by law (under R.C. 2703.14) as required by Civ.R. 4.4 if the use of reasonable diligence was demonstrated. The trial court cited Civ.R. 4.4(A), which specifies the standard of reasonable diligence, and the court quoted from our *American Tax Funding* case, which set forth the law from the Ohio Supreme Court's *Sizemore* case, both of which are relied upon in Appellants' brief. The question was properly recognized to be

reasonable diligence in the search efforts, regardless of the trial court's citation to cases that may not be precisely on point.

ASSIGNMENT OF ERROR

**{¶46}** Appellants' assignment of error contends:

"THE TRIAL COURT ERRED BY DENYING APPELLANTS' MOTION TO VACATE THE DEFAULT JUDGMENTS ENTERED AGAINST THEM AS THEY WERE VOID DUE TO LACK OF PERSONAL JURISDICTION."

**{¶47}** Appellants do not dispute they were charged with rebutting the presumption of Appellees' reasonable diligence in searching for the addresses of the four defendants at issue.[5] Appellants argue they sufficiently rebutted the presumption of reasonable diligence by showing their correct addresses at the time the lawsuit was filed, by pointing to the length of time the defendants at issue lived at those addresses, and by two defendants observing it was "unknown to me how anyone" would not find the address if they used reasonable diligence.

**{¶48}** Appellants rely on the four affidavits attached to their motion. Richard Huddleston disclosed his address in 2014 and said he also lived there in 2013. John Wayne Huddleston said he lived at his address with his wife Cynthia since 2006. Linda Hanes said she lived at her address since 2000 and "It is unknown to me how anyone, in using due diligence, did not find my address * * * when at the time of the filing of the lawsuits, I had lived there for thirteen (13) years." Billy G. Payne stated he lived with Nancy Payne at his 2013 address since 2010 and also expressed, "It is unknown to me how anyone, using due diligence, did not find our address * * *." Appellants conclude this "necessarily means there are ample public records showing their addresses."

**{¶49}** Appellants note there was no certified mail attempted on any of the four defendants at issue in this case as Appellees relied on the failure of service on the two Huddleston defendants in *Mammone* to avoid using the addresses attempted in that case. As for Appellees' reliance on their attorney's prior search in *Mammone*, Appellants initially set forth the same arguments as presented in their brief in that case. *See Mammone v.*

---

[5] Appellants no longer rely on the law cited in their motion to vacate about a defendant merely having to show they did not live where they were served which would then require a plaintiff to show the defendant in fact lived where they were served; this law did not apply to service by publication.

*Reynolds*, 7th Dist. No. 20 BE 4, 2021-Ohio-___ (consolidated for purposes of oral argument). They also set forth an additional argument on the staleness of the search applicable only to the case at bar.

**{¶50}** As to the attempted service by certified mail in that case, Appellants seem to complain the address where service was originally attempted for John Wayne Huddleston was a post office box and the address where service was originally attempted for Richard Huddleston may have been a workplace. However, they cite nothing which would prohibit such service.

**{¶51}** Appellants then set forth complaints about the Westlaw search related to these two defendants, while Appellees note it is an expensive search engine. First, they say the Westlaw printout suggests the search related to Richard Huddleston was linked to Mildred Huddleston (a record holder) rather than independently performed under his name. The document showed Westlaw found two old addresses for Richard Huddleston (which matched the old addresses of the deceased record holder) plus the more recent address (listed as his current address) which Appellees used in the attempt to serve him by certified mail (and which gave no indication it was a business address). Appellants did not make an argument below about the search result for Richard Huddleston on Westlaw, and there is no indication the notation listing him as a potential relative of Mildred meant Westlaw did not provide the information it possessed on him.

**{¶52}** They also complain certified mail was only attempted on John Wayne Huddleston at only one of the addresses listed by Westlaw (the P.O. Box) and it was not the most recently reported address. However, the address Appellees used for attempted service was reported by Westlaw as the "Current Address" under the heading of "Last Known Address Information" (with a "Last Reported" date of 1996). As Appellants point out, under "Other Address Information" there were two addresses with "Last Reported" dates of 2001 and 2000. Nevertheless, Westlaw placed these under the heading "Previous Address." In any event, none of the addresses matched the address John Wayne Huddleston listed in his affidavit, and he did not aver he would have received the certified mailing if those addresses had been used. Furthermore, Appellants did not argue this below.

**{¶53}** Next, Appellants claim Appellees should have run credit reports on the four defendants at issue, noting the will attached to the complaint (and to the affidavit on search efforts) contained their Social Security numbers. Appellants suggest the situation of having Social Security numbers to go with the names in the file is similar to a case where this court found the trial court did not abuse its discretion in finding a default judgment void based in part on information in the plaintiff's own file. *American Tax Funding*, 2014-Ohio-5831 at ¶ 32-37. Yet, the decision to uphold an exercise of discretion to vacate a judgment in one case does not mean a case with allegedly similar facts must be reversed where a trial court refused to vacate the judgment. *See id.* at ¶ 17, 37 (applying abuse of discretion standard of review).

**{¶54}** Regardless, the situation is not akin to the one existing in *American Tax Funding*. In that case, the plaintiff's own file contained the mailing address of a similarly named controlling company who paid the principal balance, provided its address to the plaintiff, and received a receipt at that address from the plaintiff stating interest was still due. *Id.* at ¶ 7-8, 34. The plaintiff also had the telephone number of the defendant, who was a business entity, and it was the plaintiff's call to this number that prompted the payment. *Id.* at ¶ 5. In addition, the defendant presented testimony from the Treasurer's Office showing the defendant's correct address was on file before the plaintiff's attorney conducted his search. Although the address was not displayed on the website of the Treasurer's Office, the Auditor's website (which was the one plaintiff's attorney claimed he searched) showed the defendant's name as the owner and specifically said to call the Treasurer's Office for mailing information (due to a negotiated tax lien). *Id.* at ¶ 32-33.

**{¶55}** Appellants also rely on the statement of the Supreme Court in *Sizemore* listing a credit report as a common source of information. As Appellees point out, *Sizemore* did not announce a mandatory checklist. *Sizemore*, 6 Ohio St.3d at 332; *American Tax Funding*, 2014-Ohio-5831 at ¶ 31. Also, *Sizemore* was before the internet was available and thus before internet-accessible subscription people-searching databases were available. *See generally Third Fed. Savings & Loan v. Taylor*, 10th Dist. Franklin No. 17AP-254, 2017-Ohio-7620, ¶ 8-9, 14-16 (where the plaintiff-bank submitted an affidavit of the vice-president of the company it hired to conduct an address search wherein it was attested the company used the LexisNexis Accurint database to locate

people; affirming the trial court's conclusion that this search constituted a reasonably diligent attempt to locate the defendants' addresses before service by publication). Although use of a subscription search service is not required for reasonable diligence, it can assist in showing reasonable diligence.

{¶56} As Appellees further point out, there is nothing to show a certain credit bureau would have returned Appellants' addresses in 2013. Appellees also say they utilized the Social Security numbers obtained from the will, which can be seen in the Westlaw printouts for the two defendants whose names showed addresses (John Wayne Huddleston and Richard Huddleston), noting their file only contained printouts when information was generated by the database (i.e., if nothing pertinent was generated, then nothing was printed). We note Westlaw reported TransUnion was the source of information for the two Huddleston defendants. In any event, Appellants did not raise these arguments below.

{¶57} Appellants next contend the trial court must not have reviewed the file attached to the affidavit of Appellees' attorney or the court would have noticed most pages involved the search for the location of the record holders and the identity of their heirs and only a few pages were relevant to the search for the addresses of the four defendants at issue. They generally noted this to the trial court in their reply in support of their motion to vacate, stating: "the file was inclusive of all the defendants, not just the four (4) individual filing to vacate judgment."

{¶58} Now, Appellants rely on an argument that the file attached to the affidavit of Appellees' attorney did not contain evidence of the search for the addresses of Linda Hanes or Nancy Payne (but just showed they were discovered through the will of Martha Lee Mitchell). Appellees say this was because there were no documents showing addresses to print. There is no requirement for a party or counsel to maintain evidence of unsuccessful searches by printing unsuccessful results. (Nor is there a requirement to print seemingly successful, but ultimately incorrect, results; Appellees happened to have saved some search results for many years.)

{¶59} Additionally, this argument was not raised to the trial court. Appellants did not argue to the trial court the file contained no evidence of the search for the addresses

of Linda Haynes or Nancy Payne or it did not contain print-outs corresponding to each effort listed in ¶ 8 as to the two Huddleston defendants.

**{¶60}** In any event, the file attached to the affidavit was a separate piece of evidence from the averment in ¶ 8 of the affidavit. Although Appellees emphasized the size of the file showing their search efforts, they pointed to other evidence as well, including the efforts listed in the affidavit of publication which were further explained in ¶ 8 of the affidavit attached to the response to the motion to vacate. Contrary to Appellants' contention, there is no indication the trial court relied on the quantity of pages in the file.

**{¶61}** As reviewed in our Statement of the Case above, the trial court relied on the statement in ¶ 8 of the affidavit on the efforts to locate the defendants at issue. The court quoted from a list of databases and records searched while looking for the defendants who were moving to vacate. The affidavit attested to unsuccessfully searching for the addresses of the defendants at issue by searching the public records, including the probate records in Belmont County, Ohio and Hidalgo and Kleberg County, Texas, the records of the Ohio Department of Natural Resources, the subscription services of Westlaw People Search and idocket.com, the databases of Whitepages, Google, and Peoplesmart, and additional websites including deathrecord.com, billiongraves.com, familysearch.org, and zabasearch.com.

**{¶62}** Although there was no specific allegation, there was an implied accusation the search was not conducted in the places listed in ¶ 8 of counsel's affidavit. Yet, the trial court could reasonably find the statements therein credible, especially after hearing from counsel at the hearing on the motion. As the trial court noted, Appellees successfully found addresses for many other defendants, including out-of-state defendants. Appellants could have challenged the affiant at the hearing where he represented Appellees if they believed his statements lacked credibility or sought to clarify whether his statements applied to Linda and Nancy (due to the lack of printouts regarding their names).

**{¶63}** Finally, Appellants raise an additional argument in this case distinct from the arguments in their brief in *Mammone*. On appeal, Appellants say it appears Appellees' attorney relied on his 2013 search efforts (prior to the May 2013 *Mammone* lawsuit) in seeking service by publication of the March 2014 complaint initiating the lawsuit

in the case at bar. They complain there is no evidence showing an updated search was conducted, essentially arguing the search was stale.

**{¶64}** Appellants' motion to vacate and Appellees' response filed in this case were similar to those filed in *Mammone*, and the trial court held a joint hearing on the motions. Statements in Appellees' response may suggest the search was not re-conducted when serving by publication in this case. However, Appellants did not argue to the trial court that Appellees' improperly relied on their attorney's search from the May 2013 lawsuit without re-conducting the search for the March 2014 lawsuit. Apparently realizing various arguments they wish to raise on appeal were not voiced to the trial court, Appellants ask this court to recognize plain error.

**{¶65}** "[T]he fundamental rule is that an appellate court will not consider any error which could have been brought to the trial court's attention." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982). The decision on whether to recognize plain error is left to the discretion of the reviewing court. *Paulus v. Beck Energy Corp.*, 2017-Ohio-5716, 94 N.E.3d 73, ¶ 30 (7th Dist.), citing *Risner v. ODNR*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 27. Furthermore the plain error doctrine in civil cases "is sharply limited to the extremely rare case involving exceptional circumstances where the error, left unobjected to at the trial court, rises to the level of challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122, 679 N.E.2d 1099 (1997).

**{¶66}** Many of the arguments about the evidence of the search were waived. The items raised on appeal that were not pointed out below do not present an obvious error or exceptional circumstances. Where the party moving to vacate fails to raise a staleness of diligence argument, the trial court loses the chance to question the affiant/counsel at the hearing and the affiant loses the chance to show the search result would have been the same in 2014 (or even that the same search was re-conducted in 2014). As Appellees emphasize, Appellants failed to show their addresses could have been located in 2013 *or in 2014*. We conclude Appellants failed to rebut the presumption of reasonable diligence in the search efforts which arose from the affidavit in support of publication. The mere statement that a defendant lived at an address cannot rebut a presumption of reasonable diligence; everyone lives somewhere. A further statement providing the

length of time a defendant lived at an address does not rebut the presumption of reasonable diligence, even for the two who lived at their address for a fairly long time.

**{¶67}** After the trial court found Appellants failed to rebut the presumption of reasonable diligence, the trial court alternatively found Appellees would have met any shifted burden of showing their search effort for the addresses of the four defendants at issue was reasonably diligent. We agree Appellees proved the search conducted was reasonable. "[S]teps [were taken] which an individual of ordinary prudence would reasonably expect to be successful in locating a defendant's address." *See Sizemore*, 6 Ohio St.3d at 332. There was no indication a search in some other common, readily available source would have located the correct addresses or even a suggestion to the trial court as to what database Appellees should have added to their search.

**{¶68}** Considering the arguments raised to the trial court below, the evidence of reasonable diligence was legally sufficient, and the trial court's decision on the facts was supported by competent, credible evidence and not unreasonable, arbitrary, or unconscionable. The trial court did not abuse its discretion or commit a legal error (reviewed de novo) by finding a failure to rebut the presumption or by finding proof of reasonable diligence was presented under the totality of the circumstances herein. Accordingly, Appellants' assignment of error is overruled.[6]

**{¶69}** For the foregoing reasons, the trial court's judgment is affirmed as the trial court properly concluded it had personal jurisdiction.

Waite, J., concurs.

D'Apolito, J., concurs.

---

[6] Appellees alternatively ask this court to affirm the trial court's judgment on grounds of waiver and laches which they raised in their response to the motion to vacate. The trial court did not address these doctrines. As these alternative arguments are only presented if this court were to sustain Appellants' assignment of error, we need not address them.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## **NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**