SIMON, d. b. a. SIMON'S MARKET, Plaintiff, v. ERVIN et, Defendants.

Common Pleas Court, Meigs County.

No. 12154.

O'Brien & O'Brien, Pomeroy, for plaintiff.
Webster & Fultz, Pomeroy, for defendant Sidney Ervin.

## OPINION

By BACON, J.

On June 4, 1954 the plaintiff filed his petition,

"Plaintiff says there is due and unpaid him from defendants upon an account, a copy of which is hereto attached and made a part hereof marked "Exhibit A" with all credits and indorsements thereon, the sum of $498.38, which he claims with interest from the 23rd day of November, 1949. Plaintiff further says that this account arose from the purchase of groceries by the defendants from plaintiff."

"Exhibit A" was not a copy of the account but a typewritten paper as follows:

"Statement

"Joe Simon, DBA

"Simon's Market,

"Middleport, Ohio.

"Mr. and Mrs. Sidney Ervin,

"c/o Scarberry's Grocery,

"896 Hysell Street,

"Middleport, Ohio

"November 23, 1949.          Balance due          $498.38."

To the caption of the petition there was added in handwriting "and 896 Hysell St." to the typewritten "Sidney Ervin and Mrs. Sidney Ervin, c/o Scarberry's Grocery, Middleport, Ohio." Plaintiff's precipe directed service upon "Sidney Ervin and Mrs. Sidney Ervin, c/o Scarbery's Grocery, Middleport, Ohio" and again there was added in handwriting "and 896 Hysell St., Middleport, Ohio."

The clerk issued summons June 4, 1954, directing service upon "Sidney Ervin and Mrs. Sidney Ervin, 896 Hysell St., Middleport, Ohio." It was returned June 7, 1954, with the following indorsement:

"Sheriff's Return. Sheriff's Office, Meigs County. Ohio, June 7, 1954. Received this writ on the 4th day of June, 1954, at 4:00 p. m. and pursuant to its command I served the same on the 7th day of June, 1954, by leaving a true copy of it, with the indorsements thereon at the usual place of residence of the within named Sidney Ervin and Mrs. Sidney Ervin. Charles Russell, Sheriff, by Ray Evans, Jr., Deputy."

A default judgment was taken January 14, 1955, against Sidney Ervin and Mrs. Sidney Ervin, in the sum of $647.78 with interest from the 12th day of January. 1955.

The original papers apparently are lost and the above is recorded Complete Record Vol. 75, page 471.

The appearance docket discloses no further action until October 28, 1959. when the defendant, Sidney Ervin, filed his motion supported by affidavit to quash the service. averring he was not a resident of Meigs County at the time of purported service and that he had never resided at 896 Hysell Street. Middleport, Ohio.

That service of summons may be set aside upon such motion if the writ or the service is invalid is well settled. The syllabus of **Grady v. Gosline et al.** 48 **Oh St** 665, 29 N E. 768. reads as follows:

"The sheriff's service of a summons upon the defendant, may, for

good cause, be set aside on motion supported by affidavit. If the summons is served by leaving a copy thereof at the wrong place, the defendant, on motion to set the service aside made before answering to the merits of the action, may be allowed to disprove the officer's return."

And the syllabus of **Hayes v. Kentucky Land Bank, 125 Oh St 359,** 181 N. E. 542, states:

"Where a personal judgment is entered by default against a defendant upon a showing of service of summons upon such defendant by leaving an attested copy at the usual place of residence of such defendant, upon a petition being filed after term to vacate such judgment it is competent to contradict the record showing service and to prove that the place where the attested copy was left was not in fact defendant's 'usual place of residence.' "

At the hearing on the motion evidence was offered by the defendant, Sidney Ervin—his own testimony, that of his second wife, and officials of the power company, the Water company and the Middleport Bank.

They established that in the spring of 1953 Sidney Ervin and his first wife moved to Portsmouth, Ohio, in Scioto County, where they rented furnished apartments during their residence in Scioto County until their divorce in that county in 1955.

The electric, gas and water were cut off at the residence they owned on Hysell Street, Middleport, Ohio, in August and September 1953. The furniture of the parties remained in the house but no one resided there until sometime after the divorce when the property was sold in 1956 and the proceeds divided. His former wife selected the items of household articles she desired and Mr. Ervin disposed of the less desirable bulky items.

Since the time Sidney Ervin and the first Mrs. Sidney Ervin moved to Portsmouth in 1953, several times a year he visited his mother in Middleport, but on the occasions he remained overnight he stayed at her home and not at his house on Hysell Street where the utilities had been disconnected.

On cross-examination it was adduced that Sidney Ervin voted in the November 1955, general election at Middleport. His vote was challenged but on the basis of his ownership of the Hysell Street real estate his vote went into the ballot box. Sidney Ervin remarried shortly after his divorce and was residing with his second wife in Portsmouth at that time.

Plaintiff offered one witness, the sheriff's deputy who had made the service. His testimony was inconclusive because, as he stated, he had served hundreds of writs. this particular service he had made six years ago. He did not know Sidney Ervin nor his place of residence prior to receiving the writ. He was unable to describe the house and its location on Hysell Street where he left the writ, nor did he know whether it was 896 or 894 Hysell Street.

Plaintiff's counsel acknowledges that the deputy did not know where Sidney Ervin lived, but avers upon inquiry he was directed to Sidney Ervin's house where he left the summons. From that two facts must must be assumed—first, that he followed the directions to the letter, second, that he was correctly directed.

In order to understand what we are about let us turn to various of the authorities cited by plaintiff's counsel, not necessarily in the order proposed.

Syllabus 2 of **Paulin v. Sparrow, 91 Oh St 279, 110 N. E. 528**, is cited. "Where a defendant has been duly and legally served with summons, a defective return by the officer making the service does not defeat the jurisdiction of the court over the person of a defendant legally served with process."

Sound law indeed. But in Simon v. Ervin we are not dealing with a defective return. The deputy's return is perfect.

Plaintiff's counsel appears to recognize that the issue is whether or not Sidney Ervin was duly and legally served with summons, for he argues from the syllabus of **Phillips v. Elwell et al, 14 Oh St 240**, that an official return in relation to facts which it is his legal duty to state, as between the parties, is conclusive of the facts stated therein until it is set aside by due course of law, and from the opinion in Korfer v. Katz et al, 14 O. N. P. ns 345, 31 O. D. 312, that the return of the officer that process has been served is proof of that fact.

In short, it is argued that this court should hold that Sidney Ervin was duly and legally served with summons because the deputy sheriff in his return said that he was.

But defendant's motion is that "due course of law" the result of which the evidence must control. The statement of the law in Korfer v. Katz, supra, was taken from **Moore's Lessee v. Starks, 1 Oh St 369**. Both cases deal with collateral attached upon judgments. Ervin's motion is not a collateral attack.

Citing all the authorities on the problems of process would needlessly fill several volumes, because every lawsuit involves legal summons or its authorized waiver. One of the strongest cases asserting its necessity is **Haley v. Hanna et al, 93 Oh St 49, 112 N. E. 149**.

Hanna obtained judgment against several persons including Haley, the summons issued for him showing that he was served by the sheriff leaving a true copy of the writ at his usual place of residence. The fact was, that Haley had no place of residence in the county at the date of service. Pleadings were made purporting to be by all defendants including Haley, both in the common pleas court and in the court of appeals. The fact was, that Haley did not authorize them. Haley was aware of the return regular upon its face and the pleadings, but did not advise the court nor the opposite party of the defect of service nor did he protest nor object to the entering by others of his appearance in the case.

After the court of appeals affirmed Hanna's judgment, Haley filed a motion to set same aside for the reason he had not been served with summons. The court of appeals found it was Haley's duty to advise the court and opposite party of the defective service, and having failed to do so and not having protested or objected to the entering by others of his appearance. his omission constituted a waiver of the original defect of service, and overruled Haley's motion.

The supreme court of Ohio unanimously reversed the court of appeals in the following language, 93 **Oh St 52.**

"We are of the opinion that the court of appeals erred in its conclusions of law. We cannot agree with the holding that it was the duty of Tim Haley to advise the court or the opposite party before judgment of the defective service, and that, having failed to do so, his omission constituted a waiver of the original defective service. Haley was not brought into court by a summons and no one had authority to enter his appearance or act for him. He had knowledge of the proceedings in court, it is true, but we do not see upon what theory the duty devolved upon him to advise the court or the parties to the proceedings of the defective service. The judgment rendered against him was of no force or effect and the court of appeals erred in refusing to vacate the same."

What is process? Merely notice of the proceedings which plaintiff causes to be made upon defendant in the manner prescribed by law or by rule of court. Nothing more, nothing less. **Sec. 2703.08 R. C.,** provides the manner of service and return. Under that section and the facts of this case two questions are presented. Did the sheriff's deputy leave a copy of the writ at Sidney Ervin's house in Middleport? If so, was that his usual place of residence on June 7, 1954?

Frankly, this court cannot determine where the writ was left. It was the deputy's recollection he left the writ with someone at the house. Its location on Hysell Street, its house number, its description the deputy was unable to supply. Plaintiff's counsel argues that the person could have been a relative or someone Ervin allowed to occupy his premises. But if we are going into the realm of conjecture it is just as plausible to believe that upon inquiry the deputy either did not correctly follow directions or was wrongly directed. This could readily be inferred from the uncontradicted testimony that Ervin's property was unoccupied and if someone was residing in the house where the writ was left then it was served at the wrong residence.

In proceedings like this the Ohio Supreme Court has directed how the courts of Ohio must regard uncontradicted evidence of this nature. In Hayes v. Kentucky Land Bank, supra, the sheriff left a copy of the summons for defendant at her daughter's home. Defendant actually received the writ but when she explained to her attorney that she was only on a visit and her usual place of residence was elsewhre she was advised to ignore the writ  Although the sheriff returned that summons was served "by delivering a true and certified copy thereof to her at her usual place of residence," the supreme court unanimously held the service should have been quashed.

Prior to the purported service, counsel for codefendants wrote her at a Cleveland address stating he wished to communicate with her and asking her present address. She replied, giving her daughter's address. The supreme court stated this lacked probative value, because it merely stated where mail would be received.

At **page 365** of the Hayes opinion, **125 Oh St,** the court said:

"The defendant, who challenged the jurisdiction over her person, testified in her own behalf. If another witness had given testimony

which contradicted her upon essential points, or if she had contradicted herself, or had made admissions which tended to support the claim of residence in Canton, a wholly different situation would be presented. The trial court could not wholly disregard her uncontradicted testimony. Neither could it draw inferences contrary to her affirmative statements. The court therefore erred in finding that good and valid service was had upon her, and that the court had jurisdiction over her person."

The Hayes case is a strong case indeed, because it must be remembered the defendant had actually received the writ when it was left at her daughter's residence, where defendant was then and there actually residing upon a temporary visit.

And the Hayes case answers plaintiff's argument concerning the voting in Ervin in 1955, Chief Justice Marshall stating at page 363,

"A residence for suffrage, or for taxation, is not necessarily the same as that for purposes of jurisdiction."

Counsel strongly urges §3503.02 R. C., be considered in connection with Ervin's 1955 vote in Middleport. But as the Chief Justice continues in his opinion,

"The term 'residence,' as employed in different statutes, must therefore depend upon the context and legislative purpose and intent. We are concerned in the instant case with jurisdiction."

And so it is in this case, for we are not concerned with the legality of Ervin's vote nor whether his Middleport real estate held his domicile for voting purposes. The question is, was it his usual place of residence June 7, 1954?

Upon the uncontradicted testimony that he and his wife moved to Scioto County in 1953, discontinued the utilities at their Middleport home in the late summer of 1953, that the house remained unoccupied from 1953 until it was sold in 1956. following their divorce in Scoito County in 1955, that from 1953 to this day neither ever resided in Meigs County save on temporary visits this court can only conclude that their Hysell Street property was not the Ervins' usual place of residence June 7, 1954, and that the return of summons in this case must be quashed.

Under the law of Ohio, if the defendant had been on a visit of inspection and found the writ at the Hysell Street residence (although this was never satisfactorily established) the very next morning, this court would still not have obtained jurisdiction. Hayes v. Kentucky Land Bank, supra. It was definitely not then his usual place of residence.

Plaintiff cites many authorities outlining the powers of amendment courts possess. For instance Burton v. Buckeye Ins. Co., 26 Oh St 467, a case where the summons, in conformity to plaintiff's precipe commanded that the "State Fire Insurance Co." be notified. The sheriff duly served the real defendant the Buckeye Insurance Company. Amendment of the writ was upheld. These authorities for amendment undoubtly state good law, but this court cannot by amendment do what the deputy sheriff in this case failed to do, that is, leave a copy of the writ at defendant's usual place of residence.

The court has carefully examined the authorities cited by plaintiff's

counsel. He cited Millis v. Millis, 17 O. N. P. ns 254, the facts of which hardly apply to this case, nor the law either for that matter, since service in divorce is made under special statutes for such cases. And this court would find it impossible to agree with that court's absurd conclusion on page 263,

". . . the trouble is with the Legislature. In other words, the Legislature of the state of Ohio has not provided for service in a case of this kind. . . ."

Actually it was an ordinary divorce petition and service by publication made upon an army officer then residing at Newport, Rhode Island, his duty assignment. The fact that he owned a residence in Ohio then in charge of a caretaker, and that he expected to be and had been in Ohio on official duties as a member of the United States Engineering Board evinced the doubtful pronouncement above set forth.

In Mayer et al v. Groves, 18 O. C. C. ns 38, O. C. D. 580, there was no evidence to contradict the sheriff's return save the negative evidence of the defendant and his wife to the effect that no writ was left at their residence. The case is no more in point than Brumbaugh v. Coblentz, 16 Abs 331, where the correctness of the return was not denied.

Hill v. Blumenberg, 19 Oh Ap 404, is actually of little comfort to plaintiff. The Athens County appointment of Blumenberg's widow as his administratrix was upheld by the court of appeals almost solely upon a year's actual residence in 1896 and voting record there continuously until 1920. The appeals court, went on to say that for purposes of jurisdiction Blumenberg's residence was Washington, D. C.

Harris v. Church, 22 Oh Ap 315, 153 N. E. 312, and Nast v. Hurtig et al, 25 Oh Ap 16, 157 N. E. 316, are cited for the statement of the law in the first syllabus of the Harris case, and the second syllabus of the Nast case.

"The burden is on one challenging the legality of service of summons to show, by clear and convincing evidence, the incorrectness and inaccuracy of the return." Page 315.

"To overcome probative force of return of service of summons, clean and convincing evidence is required." Page 17.

In the Harris case the burden was not met where the defendant solely by his affidavit charged service made upon him occurred after return day, where appearance docket disclosed summons filed on return day showing service the same day, and both parties refrained from calling the clerk or the officer making service.

In the Nast case the burden was met when it was shown the deputy sheriff handed the writ to one in no wise connected with the corporate defendant.

In this case the defendant has proven by clear and convincing evidence that the summons in this case was not left at his usual place of residence.

The summons must be quashed and an entry to such effect may be presented.