[Cite as *In re Adoption of K.M.B.*, 2026-Ohio-1844.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

IN RE: :

ADOPTION OF K.M.B. :

:

:

:

:

CASE NO. CA2026-01-002

<u>OPINION AND</u>
<u>JUDGMENT ENTRY</u>
5/20/2026

APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. 2023-5008

Smith & Webb, Attorneys, and Jesse R. Clark, for appellant.

Ferguson Legal Group, Ltd., and Anthony C. Satariano, for appellee.

# **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Kendi Jordan ("Mother"), the biological mother of K.M.B., appeals from a

decision of the probate court denying her motion for leave to file an objection to a petition

for adoption filed by Rachel Bean ("Stepmother"). Because we conclude that Mother was not properly served with notice of the petition, we reverse.

## I. Factual and Procedural Background

{¶ 2}    K.M.B. was born to Mother and Father (the biological father of K.M.B.) in August 2016. Mother and Father never married, and in March 2019 the juvenile court awarded Father legal custody of the child. Father later married Stepmother.

{¶ 3}    Beginning in 2020, Mother lived with her fiancé at 3197 Hackleshin Road in Peebles, Adams County. That arrangement was disrupted in late summer 2022, when Mother suffered a mental-health crisis. On August 31, 2022, the fiancé obtained a civil protection order against Mother that barred her from the Hackleshin Road home. The petition the fiancé prepared listed Mother's address as 101 South Quarry Street in Bainbridge, an address belonging to one of Mother's cousins. The fiancé later testified that he chose the Bainbridge address simply because it was where he "felt" Mother "might be located."

{¶ 4}    Over the months that followed, Mother moved among several places. She stayed briefly with her cousin in Bainbridge, was admitted to Western Kentucky State Hospital, spent time at a Kentucky state park, and stayed for a couple of weeks at another cousin's home in Chillicothe. Her testimony, uncontradicted on this point, was that she did not return to the Bainbridge address after September 23, 2022.

{¶ 5}    Throughout this period, Mother continued to use Hackleshin Road as her mailing address. She sent a Christmas card bearing that return address in December 2022. On February 7, 2023, she sent a Valentine's Day card addressed to the child at Stepmother's home, again with Hackleshin Road as the return address. Two weeks later, on February 21, 2023, the fiancé voluntarily vacated the protection order, and Mother returned to Hackleshin Road. By that time, a custody matter concerning K.M.B. had been

pending in the Highland County juvenile court for years, with Mother and Father as parties. Mother's address of record in that case was Hackleshin Road, and Stepmother had access to those records.

{¶ 6}   On May 9, 2023, Stepmother filed a petition in the Highland County Probate Court to adopt K.M.B. By statute, Stepmother was required to give notice of the petition to Mother, *see* former R.C. 3107.11,[1] and Stepmother directed service of the notice to the Bainbridge address. She later testified that she chose that address because it appeared on the August 2022 protection order. Stepmother acknowledged that, before filing, she had contacted Highland County Job and Family Services and the Adams County Court, but had not reviewed the Highland County juvenile case file (which listed Mother at Hackleshin Road) and had not checked the Adams County records that would have shown the protection order vacated four months earlier. She conceded that she "knew how to, but decided not to," consult those Adams County records.

{¶ 7}   The first certified-mail attempt, on June 5, 2023, was returned undelivered. A second attempt, on June 10, 2023, met the same fate. A third attempt, on June 15, 2023, was signed for at the Bainbridge address, but not by Mother and not by anyone who lived there. The signatory was an aunt of Mother's who was visiting that day. The aunt held the envelope until July 9, 2023, when she handed it to Mother after church.

{¶ 8}   Mother had 14 days after service of notice to file an objection to an adoption petition. Former R.C. 3107.07(K).[2] She filed a motion for leave to file objections to the adoption petition on September 1, 2023, asserting that she had not been properly served. The probate court denied the motion without a hearing on April 8, 2024, concluding that

---

1. R.C. 3107.11 was amended effective March 2025, so the petition, filed in May 2023, is governed by the prior version of the statute. All citations to R.C. 3107.11 in this opinion are to the former version.

2. R.C. 3107.07 was also amended effective March 2025, so the prior version of the statute applies. All citations to R.C. 3107.07 in this opinion are to the former version.

Mother had been properly served but failed to respond timely. Mother appealed, and we reversed and remanded, directing that an evidentiary hearing be held on the question of service. *In re Adoption of K.M.B.*, 2024-Ohio-3093 (12th Dist.).

{¶ 9} The probate court conducted that hearing on November 22, 2024. Mother, Stepmother, and Mother's fiancé each testified. On December 30, 2025, the court entered an order again denying Mother's motion to file objections and subsequently issued accompanying findings of fact and conclusions of law. The court concluded that "[e]very effort was clearly made to apprise Mother of the within petition for adoption" and that the certified mailing to the Bainbridge address constituted valid service under the law.

{¶ 10} Mother appealed.

## II. Analysis

{¶ 11} Mother raises two assignments of error directed at the trial court's conclusion that service at the Bainbridge address constituted valid service:

{¶ 12} Assignment of Error No. 1:

THE TRIAL COURT INCORRECTLY RULED THAT MOTHER WAS SERVED PROPERLY AT 101 SOUTH QUARRY STREET, BAINBRIDGE, OHIO 45612.

{¶ 13} Assignment of Error No. 2:

THE TRIAL COURT INCORRECTLY RULED THAT APPELLEE MADE EVERY EFFORT TO APPRISE MOTHER OF THE ADOPTION DOCUMENTS.

{¶ 14} The first assignment of error contests the trial court's conclusion that service was proper under the civil rules; the second contests the constitutional sufficiency of the service.

## A. Standard of Review

{¶ 15} The parties invoke abuse of discretion as the standard of review, citing our prior remand. *See In re Adoption of K.M.B.*, 2024-Ohio-3093, at ¶ 9 (12th Dist.). That

- 4 -

standard is correct, but it conceals a more layered inquiry. "An abuse of discretion may be found when the trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"" *In re L.R.M.*, 2015-Ohio-4445, ¶ 16 (12th Dist.), quoting *Musson v. Musson,* 2014-Ohio-5381, ¶ 15 (11th Dist.), quoting *Thomas v. Cleveland,* 2008-Ohio-1720, ¶ 15 (8th Dist.). We do not disturb a trial court's findings on historical facts if they are supported by competent, credible evidence, and we defer as well to the credibility judgments those findings entail. *Franks v. Reynolds*, 2021-Ohio-3247, ¶ 44 (7th Dist.). Even on deferential review, a court may not "wholly disregard" uncontradicted testimony or "draw inferences directly contrary to" the unchallenged statements of a person. *Hayes v. Kentucky Joint Stock Land Bank of Lexington*, 125 Ohio St. 359, 365 (1932).

### B. The Governing Law

{¶ 16} A mother's consent is ordinarily a prerequisite to the adoption of her child. Former R.C. 3107.06(A).[3] But consent is excused if, after notice that an adoption petition has been filed, the mother fails to file objections within 14 days. R.C. 3107.07(K).

{¶ 17} Notice of an adoption petition must be given as the civil rules direct. R.C. 3107.11(C). Because R.C. 3107.11 requires "notice" rather than "summons," service is governed by Civ.R. 73(E). *In re Adoption of L.R.B.*, 2018-Ohio-1489, ¶ 27 (9th Dist.); *In re Adoption of G.O.D.*, 2024-Ohio-1627, ¶ 23-24 (3d Dist.). Civ.R. 73(E) specifies various methods of notice. The method relevant here permits notice by certified mail addressed to "the person's usual place of residence." Civ.R. 73(E)(3).

{¶ 18} The stakes for getting service of this notice right are substantial. A parent's interest in raising her child is "one of the most precious and fundamental in law," *In re*

---

3. R.C. 3107.06 was also amended effective March 2025, so the prior version of the statute applies.

*Adoption of A.N.L.*, 2005-Ohio-4239, ¶ 50 (12th Dist.); *see also Troxel v. Granville*, 530 U.S. 57, 65 (2000). And termination of that interest has been called "the family-law equivalent of the death penalty." *In re R.K.*, 2018-Ohio-23, ¶ 1. The Ohio Supreme Court has accordingly required the consent provisions of R.C. 3107.07 to be "strictly construe[d] . . . to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 366 (1985). "Adoption not only creates parental rights in an adoptive parent, but also terminates all parental rights of a natural parent. Because of the finality and serious import of adoption, the law accords protections to a natural parent when the adoption of a child is proposed. Among those protections are the right to adequate notice and an opportunity to be heard before any parental rights which may exist are terminated." (Citations omitted.) *In re Adoption of Greer*, 70 Ohio St.3d 293, 298, 1994-Ohio-69.

{¶ 19} The focus here is on the meaning of the phrase "usual place of residence" in Civ.R. 73(E). The Ohio Supreme Court explained in *Hayes v. Kentucky Joint Stock Land Bank of Lexington* that for purposes of service of process a "usual place of residence" "must have the character of a settled or fixed abode, which includes an element of permanency," though "no particular time is required to establish a residence." *Hayes*, 125 Ohio St. at 364. "Permanency," the Court added, "is necessary only in the sense of being indefinite in point of time and that there be no present intention of a future removal therefrom." *Id.*

{¶ 20} Two corollaries from *Hayes* are important here. First, a person's "transient and temporary presence . . . in a place which is the unquestioned residence of another does not meet the terms of the statute." *Hayes* at 364. The defendant in *Hayes* had been found at her daughter's Canton (Ohio) home over a stretch from before Christmas until late January, but her uncontradicted testimony showed that she had given up her last

Ohio residence months earlier and was living in Washington, D.C. The Court held that the Canton address could not be her usual place of residence simply because she happened to be there, however extended the visit. *Id.* at 362-365. Second, eventual receipt of the papers does not save defective service. "The mere fact that the summons was later received," the Court held, "is not decisive. We are concerned with a rule, not the event of the instant case." *Id.* at 364. The Court explained that the right to be served at one's residence is "a substantial right," because personal service guarantees notice, while service by leaving "may or may not result in notice." *Id.*

{¶ 21} Ohio courts citing *Hayes* have applied the same logic. A house standing unoccupied for years cannot be a usual place of residence even when the recipient happens to find process there during a visit. *Simon v. Ervin*, 84 Ohio Law Abs. 26 (C.P. 1960). A post office box does not qualify, because it lacks "the character of a settled abode established for a period of indefinite duration." *Zachary v. White*, 26 Ohio App.2d 97, 102 (10th Dist. 1971) (defining "usual place of residence"), quoting 44 Ohio Jur.2d, Process, § 40 (1955). And an address listed on an old document, but disclaimed by uncontradicted evidence at the time of service, does not support service either. *Parra v. Continental Tire LLC*, 2012-Ohio-4138, ¶ 22-25 (9th Dist.) (address listed on a years-old driver's license, but disclaimed by uncontradicted affidavit, was not the person's usual place of residence at the time of service), citing *Hayes*. The constant across these cases is the focus on present, settled, indefinite residence. Prior connections to an address do not establish present residence there.

{¶ 22} In sum, the phrase "usual place of residence" does not mean every place a person has stayed. Rather, it is "the place where a person has his fixed permanent home and to which, upon leaving for any temporary purpose, he intends to return." *Case v.*

*Case*, 70 Ohio Law Abs. 2, 13 (C.P. 1955) (defining the "residence"). More than bare physical presence is needed.

### C. The Bainbridge Address Was Not Mother's "Usual Place of Residence"

{¶ 23}  The hearing record is largely undisputed, and where it is disputed, the points that matter are uncontradicted in Mother's favor. Mother testified that she had lived with her fiancé at the Hackleshin Road home in Peebles since 2020. Following her mental-health crisis in late summer 2022, the fiancé obtained the protection order listing the Bainbridge address, her cousin's home, only because that was where the fiancé "felt" Mother "might be located." Mother stayed briefly at Bainbridge but did not return after September 23, 2022. Over the next several months she was hospitalized in Western Kentucky, stayed at a Kentucky state park, and stayed with another cousin in Chillicothe. The protection order was vacated on February 21, 2023, and she returned to Hackleshin Road, where she had been living for nearly four months by the time Stepmother attempted service in June 2023.

{¶ 24} Stepmother's own testimony confirmed the principal facts. She knew that Mother and the fiancé had cohabited at Hackleshin Road for years. She chose the Bainbridge address solely because it appeared on the August 2022 protection order. She conceded that she "knew how to, but decided not to," check the Adams County records that would have shown the order had been vacated four months earlier. She did not contact Mother, the fiancé, or the Highland County juvenile court, where the same family's custody dispute was pending and where Mother's address of record was Hackleshin Road. Two certified mailings to Bainbridge came back undelivered. The third was signed for, but by Mother's aunt, who, on Mother's uncontradicted testimony, did not live there and was visiting that day. The aunt held the envelope and gave it to Mother by hand on July 9, 2023, after church.

{¶ 25} The trial court nonetheless concluded that "[e]very effort was clearly made to apprise Mother" and that "the civil rule was complied with." It made no finding that Mother's testimony was inaccurate. To the contrary, the court expressly recognized that Mother "averred her actual residence was in Adams County" and had only "resided with a relative in Bainbridge." It discounted only one piece of corroborating evidence as "self-serving"—Mother's testimony about the Hackleshin Road return address on the February 7, 2023 Valentine's Day card she had sent to Stepmother's home.

{¶ 26} These facts cannot satisfy the *Hayes* standard. The Bainbridge address was Mother's cousin's home, not her own. Mother's connection to it lasted, on the most generous reading of the record, a matter of weeks. By June 2023 she had been gone nine months and back at Hackleshin Road for four. Her time at Bainbridge was bracketed by hospitalization, a Kentucky state park, and a different cousin's home, a sequence of refuges that does not approach a settled abode. Even Mother's fiancé, the person who placed the Bainbridge address on the protection order, testified that he chose it only because it was where he "felt" she "might be located." A guess about where someone might be is not a fixed permanent home.

{¶ 27} The factual pattern matches *Hayes* almost exactly. There, a months-long stay at a relative's home was held insufficient where uncontradicted testimony placed the visitor's settled abode elsewhere. *Hayes*, 125 Ohio St. at 362-365. So too here. Nor does it matter that the Bainbridge address once appeared on a court document. An address on a prior official record, but disclaimed by uncontradicted evidence at the time of service, will not support residence service. *Parra*, 2012-Ohio-4138, at ¶ 25 (9th Dist.). A protection order from the prior summer, founded on this record on nothing more than a guess, proves only what the issuing court was told then, not where the recipient lived nine months later.

{¶ 28} The trial court's discounting of the Valentine's Day card cannot fill that gap. A trier of fact may weigh credibility where testimony is contradicted. But where uncontradicted testimony is corroborated by physical evidence in Stepmother's own possession, an envelope she herself received, postmarked four months before service, bearing Hackleshin Road as the return address, the court cannot draw inferences "directly contrary to" the affirmative statements made. *Hayes* at 365. The label "self-serving" cannot make the envelope disappear. And even setting the card aside, nothing in the record ties Mother to Bainbridge in any "settled or fixed" way as of June 2023. Past stays and a cousin's hospitality do not transform a temporary refuge into a usual place of residence.

{¶ 29} The probate court therefore erred in treating the Bainbridge address as Mother's "usual place of residence" under Civ.R. 73(E).

## D. Actual Notice Does Not Cure Defective Service

{¶ 30} Stepmother's remaining argument is that Mother in fact received the papers from her aunt on July 9, 2023, saw the 14-day warning, and waited 54 days to act. *Hayes* addressed and rejected the same argument. "The mere fact that the summons was later received," the Court held, "is not decisive. We are concerned with a rule, not the event of the instant case." *Hayes*, 125 Ohio St. at 364. *See also Hunt v. Alderman*, 2025-Ohio-2944, ¶ 21 (service was insufficient, even though defendant eventually received notice of the action against him). The 14-day clock in R.C. 3107.07(K) presupposes that valid notice was given. If the service of notice did not satisfy Civ.R. 73(E), the clock did not start. *See Maryhew v. Yova*, 11 Ohio St.3d 154, 157 (1984) ("Inaction upon the part of a defendant who is not served with process, even though he might be aware of the filing of the action, does not dispense with the necessity of service.").

{¶ 31}  There is a heavy consequence of waiver on a parent who fails to act within 14 days of notice properly given. Where notice has not been properly given, that consequence does not attach. *See Hunt* at ¶ 21 ("The service thus was insufficient, and so the action was not timely commenced.").

{¶ 32}  The first assignment of error is sustained.

## E. The Second Assignment of Error is Moot

{¶ 33}  Because we have concluded that service did not satisfy Civ.R. 73(E), we need not decide whether it also fell short of the independent demands of due process. *See Hunt* at ¶ 12 ("The rules governing service of process derive both from the Ohio Rules of Civil Procedure and the requirements of the Due Process Clause of the Fourteenth Amendment to the United States Constitution."). The rule-based defect is enough on its own to require reversal, and a constitutional ruling would change nothing about the disposition. We accordingly conclude that the due process question raised in the second assignment of error is moot, and we decline to address it. App.R. 12(A)(1)(c) (an appellate court need not decide assignments of error that have been rendered moot by the resolution of another).

## III. Conclusion

{¶ 34}  The probate court erred in determining that Mother was properly served with notice of the adoption petition. The court's judgment is reversed, and this case is remanded for further proceedings consistent with this Opinion.

HENDRICKSON, P.J., and SIEBERT, J., concur.

# **J U D G M E N T   E N T R Y**

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed and remanded for further proceedings consistent with the above Opinion.

It is further ordered that a mandate be sent to the Clinton County Court of Common Pleas, Probate Division, for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

_/s/ Robert A. Hendrickson, Presiding Judge_

_/s/ Mike Powell, Judge_

_/s/ Melena S. Siebert, Judge_